IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROLAND CARLISLE,

     Plaintiff,

v.

NATIONAL COMMERCIAL
SERVICES, INC., et al.,

     Defendants.

CIVIL ACTION NO.
1:14-CV-515-TWT-LTW

## MAGISTRATE JUDGE'S ORDER AND  NON-FINAL REPORT AND RECOMMENDATION

This action is presently before the Court on Defendant National Commercial Services, Inc.'s Motion to Vacate Default, Plaintiff Roland Carlisle's Motion to Strike or Disregard Declaration of Zoran Jovanovski, and Plaintiff's Motion for Protective Order and to Quash.  Docket Entry [38, 43, 51].  For the reasons set forth below, the undersigned **RECOMMENDS** that National Commercial Services, Inc.'s Motion to Vacate Default be **DENIED**.  Docket Entry [38].  Plaintiff's Motion to Strike or Disregard Declaration of Zoran Jovanovski is **GRANTED**.  Docket Entry [43].  Finally, Plaintiff's Motion for Protective Order and to Quash is **GRANTED**.  Docket Entry [51].

## PLAINTIFF'S MOTION TO STRIKE

As an initial matter, Plaintiff Roland Carlisle ("Plaintiff") moves to strike the Declaration of Zoran Jovanovski, who is the owner of Defendant National Commercial Services, Inc. ("NCS").  Plaintiff seeks to strike the Declaration of Jovanovski on the grounds that the Declaration is untimely because it was filed to support NCS' opening

brief submitted with NCS' Motion to Vacate Default Judgment, but was not filed until NCS filed its Reply Brief.  NCS argues in response to Plaintiff's Motion to Strike that only pleadings may be stricken, and even if it was appropriate to strike a declaration, it would be inappropriate to do so here because the Jovanovski Declaration is merely offered to counter points made in Plaintiff's Response.

This Court finds that the Declaration of Jovanovski should not be considered. Rule 6(c) of the Federal Rules of Civil Procedure provide that "[a]ny affidavit supporting a motion must be served with the motion." Fed. R. Civ. P. 6(c).  The purpose of Rule 6(c)(2) is to ensure that the party opposing a motion be given sufficient time to respond to affidavits filed by the moving party, thereby avoiding trial by ambush and undue delay in the case. <u>Tishcon Corp. v. Soundview Comm'ns</u>, No. 1:04-CV-524-JEC, 2005 WL 6038743, at *8 (N.D. Ga. Feb. 15, 2005)).  Similarly, the Local Rules for this Court provide that "[e]very motion presented to the clerk for filing shall be accompanied by a memorandum of law which cites supporting authority.  If allegations of fact are relied upon, supporting affidavits must be attached to the memorandum of law." LR 7.1A(1), NDGa.  Thus, as a general rule, affidavits must be filed and served with the motion and courts refuse to consider affidavits supportive of facts referenced in an opening brief. <u>Exceptional Mktg. Grp. v. Jones</u>, 749 F. Supp. 2d 1352, 1359-60, 1365 (N.D. Ga. 2010) (C.J. Thrash) (granting plaintiff's motion to strike affidavits filed with defendant's reply brief because they merely embellished facts presented in defendant's opening brief in support of motion to dismiss); Moore's Federal Practice ¶ 60.8 (3d ed.

2

2015) ("If the reply affidavits are considered to support the original motion rather than dealing with issues raised by the opposition, they should not be admissible. Rule 6(c)(2) requires that the supporting affidavits be filed with the initial motion, and a party should not be able to evade that requirement by submitting additional affidavits supporting the original motion in conjunction with a reply. The courts generally allow reply affidavits to be filed only when the affidavits support the reply rather than the original motion."). Affidavits filed with a reply brief are considered only for the "limited purpose of responding to matters raised in the responses filed by the opposing parties." Exceptional Mktg. Grp., 749 F. Supp. at 1360; Tishcon, 2005 WL 6038743, at *9 (striking declarations which were filed on reply but actually supported original motion because defendants would have no opportunity to respond to pivotal evidence and utilizing the movant's procedures would greatly extend the time required complete briefing of a motion and properly evaluate the motion).

NCS argues Jovanovski's Declaration should be considered because it counters points made in Plaintiff's Response in Opposition to the Motion to Vacate Default Judgment. In support, NCS contends that Jovanovski's Declaration responds to Plaintiff's argument that NCS failed to set forth specific dates as to when it learned of the default and/or Amended Complaint prevented a finding that good cause existed to vacate the default. Specifically NCS argues the Jovanovski Declaration supplies "missing information." NCS also contends that the Declaration merely responds to Plaintiff's argument that NCS was properly served. In this Court's view, however, the

3

Jovanovski Declaration should not be considered for the purpose of ascertaining whether NCS was properly served because as discussed below, NCS waived its objection to service when NCS failed to raise improper service in its opening brief in support of NCS' Motion to Vacate default.  Furthermore, much of the Jovanovski Declaration provides support for factual assertions raised in NCS' opening brief in an effort to present good cause for setting aside the entry of default, for which NCS failed to provide evidentiary support when it filed its initial brief.  For instance, in NCS' opening brief, NCS indicated that the Amended Complaint was served on NCS by leaving a copy with a mid-level employee instead of Zoran Jovanovski, who was the registered agent, that NCS initially sought to settle the case, that NCS only recently learned of the default, and that NCS sent the validation notice required by 1692g to Plaintiff.  On Reply, NCS now seeks to submit evidence from Jovanovski for the first time regarding the manner of service, NCS' actions after learning of the lawsuit, details about when NCS learned of the default, and details about the validation notice it sent to Plaintiff.  Additionally, to the extent that, as NCS argues, the Declaration could be construed as supplying "missing information," the information was only "missing" because NCS made arguments necessitating such evidence and detail within its opening brief but failed to provide any specific details or supporting evidence, not because Plaintiff presented a new issue on Reply to which NCS needed to respond.  Thus, this Court disagrees with NCS and finds that the Declaration of Jovanovski was not submitted for the purpose of responding to matters raised in Plaintiff's Opposition Brief, but rather to cure the error that NCS made

4

when NCS did not file evidence in support of its factual allegations presented in its opening brief.  Moreover, this case is not an appropriate case for consideration of the untimely filed Declaration because the case has already been delayed by NCS' lengthy default.  If the Court were to consider the late Declaration, the Court would have to further delay the case in order to extend the briefing to allow Plaintiff to respond to the allegations within the Declaration.  In addition, as discussed below, even if the Court were to consider the late-filed Declaration, it would not change the result in this case. Accordingly, this Court concludes that the Jovanovski Declaration should not be considered and Plaintiff's Motion to Strike is **GRANTED**.   Docket Entry [43].

### NCS' MOTION TO VACATE DEFAULT

## I.    BACKGROUND

On February 21, 2014, Plaintiff filed his Complaint in this Court, and subsequently amended his Complaint on May 16, 2014.  (Docket Entries 1, 6).  In Plaintiff's Amended Complaint, Plaintiff contends that NCS violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.  Plaintiff argues  NCS is a California corporation whose principle business is the collection of debts from consumers and as such, NCS regularly furnishes information to one or more consumer reporting agencies including Defendants Experian Information Solutions, Inc., Trans Union, LLC, and Equifax Information Services, LLC.  (Am. Compl. ¶ 5).

The origin of the conflict between Plaintiff and Defendants is a dispute Plaintiff

5

had with Thrifty Car Rental ("Thrifty"). Plaintiff states that on July 15, 2012, he rented a car from Thrifty and paid a deposit of $350.00. (Am. Compl. ¶ 9). Law enforcement stopped Plaintiff while he was driving the vehicle, and impounded it. (Am. Compl. ¶ 10). On July 20, 2012, Thrifty provided Plaintiff with a rental summary indicating that the $350.00 rental deposit had been applied and a zero balance remained. (Am. Compl. ¶¶ 11-12). Thrifty subsequently billed Plaintiff for $1,017.41 on August 8, 2012, $882.50 on August 10, 2012, and $1,782.61 on August 15, 2012. (Am. Compl. ¶¶ 9-14).

On September 25, 2012, Plaintiff received a collection letter from JNR Adjustment, Inc. indicating that he owed $882.50 to DTAG Rental. (Am. Compl. ¶ 17). Plaintiff disputed the debt. (Am. Compl. ¶ 17). On February 22, 2013, NCS left Plaintiff a voicemail seeking to collect the debt, and Plaintiff again disputed the debt in March 2013. (Am. Compl. ¶¶ 19-20). A representative of NCS advised Plaintiff that there was no information in the file concerning the debt, but that NCS would obtain the information from Thrifty and return Plaintiff's call. (Am. Compl. ¶ 22). Plaintiff states that NCS nevertheless reported to Experian that he owed $1,892.00 and that the payment status was seriously past due; reported to Equifax that he owed $1,892.00 and that the status was unpaid; and reported to Trans Union that he owed $1,892.00, but that the payment status was "charged off to bad debt." (Am. Compl. ¶¶ 24-26). NCS did not report to any of the credit reporting agencies that Plaintiff had disputed the debt. (Am. Compl. ¶¶ 24-26). When Plaintiff contacted Equifax to dispute the accuracy of NCS' information and requested that Equifax investigate, Equifax ultimately reported to

6

Plaintiff that NCS had verified to Equifax that the balance owed was being reported correctly.  (Am. Compl. ¶ 29).  When Plaintiff challenged the accuracy of NCS' reporting with Experian, Experian acknowledged Plaintiff's dispute letter, but did not ever advise him as to the results of the investigation of the accuracy of NCS' report.  (Am. Compl. ¶ 34).  When Plaintiff notified Trans Union that he disputed the debt, Trans Union ultimately advised him that the investigation results were complete and the results were "VERIFIED, NO CHANGE.").  (Am. Compl. ¶ 27).  Trans Union also enclosed a copy of the NCS tradeline listing the balance owed Thrifty as $2,071 and that the debt was not disputed.  Plaintiff contends that NCS violated (1) Section 1692g(a) of the FDCPA when NCS failed to provide proper written notice within five days of the initial communication; (2) Section 1692e(2)(A) when NCS falsely represented the amount and legal character of the debt; and (3) Section 1692e(8) when NCS made false representations to Trans Union, Equifax, and Experian.  (Am. Compl. ¶ 45).  Plaintiff also contends that NCS violated the FCRA when NCS reported to Trans Union, Equifax, and Experian that Plaintiff owed a debt, failed to properly investigate his dispute of the debt, failed to accurately respond to verification requests by Equifax and Trans Union, failed to accurately report results of an accurate investigation to other reporting agencies, and failed to correct its own internal records to prevent the re-reporting of incorrect information to consumer reporting agencies.  (Am. Compl. ¶ 78).  Finally, Plaintiff contends that NCS' violations of the FDCPA and the FCRA were also violations of Georgia's Fair Business Practices Act.  (Am. Compl. ¶ 83).

7

Plaintiff's Return of Service indicates that he served Susanna Aleksanyan with his Complaint and Amended Complaint on May 21, 2014, and that Aleksanyan is an Assistant Manager and designated by law to accept service of process on behalf of NCS. (Doc. 11). Plaintiff also filed a second Return of Service indicating that his Complaint and Amended Complaint was served upon Jackie Aviles on June 20, 2014, and that Aviles was the Administrative Manager and designated by law to accept service of process on behalf of NCS. (Doc. 18). This Court takes Judicial Notice of the California Secretary of State's website which indicates that NCS' address is 6644 Valjean Ave., Suite 100, Van Nuys, California 91406, and that NCS' agent for service of process is Zoran Jovanovski, and that Jovanovski's address is the same as that indicated for NCS. Corporations Search for National Commercial Services, Cal. Sec'y of State, http://http://kepler.sos.ca.gov (last visited May 15, 2015). Both the May and June Returns of Service indicate NCS was served at the aforementioned address.

After NCS failed to answer the Complaint, on July 14, 2015, the Clerk of Court entered default against NCS upon Plaintiff's request. (Doc. 23, entry dated July 14, 2015). Nearly four months later, on November 3, 2014, NCS moved to set aside the entry of default. (Doc. 38). NCS appears to concede in its opening brief that it did not timely answer Plaintiff's Complaint, but contends that the default should be set aside because it did not willfully ignore the litigation. (Def.'s Br. 4, 8 ("As stated above, NCS's failure to timely respond to the Amended Complaint was not willful inaction, but the result of excusable neglect.")). Instead, NCS argues that only a mid-level employee

8

of NCS was served, and as a result, corporate officers did not immediately learn of the Amended Complaint. (Def.'s Br. 2). NCS further delayed its answer when it attempted to settle the matter with opposing counsel. NCS states that when it learned of the Amended Complaint, its California attorney contacted Plaintiff's counsel in an attempt to resolve the matter. (Def.'s Br. 2). According to NCS, while its counsel was attempting to resolve the matter, Plaintiff's counsel did not reveal that a default had been entered and that defense counsel only recently learned that default had occurred. (Def.'s Br. 2). NCS contends that the default should be set aside because the neglect that led to the tardiness of its Answer was excusable. NCS states that while it could have been more careful, its tardiness was caused by its efforts to resolve the suit and was not willful. (Def.'s Br. 4). NCS further contends that Plaintiff would not suffer prejudice as a result of the default because at the time NCS sought to set aside the default, discovery was still ongoing. NCS argues it has valid defenses to Plaintiff's FDCPA and FBPA claims because it sent the validation notice required by Section 1692g, the FDCPA does not require a debt collector to independently investigate the merits of a debt and allows the debt collector to rely on the creditor's representations, and NCS may assert the bona fide error defense. Finally, NCS contends that it complied with the FCRA because it confirmed with the creditor that the amount being demanded was the amount owed and verified that the balance was being reported correctly.

9

## II.     LEGAL ANALYSIS

### A.     National Commercial Services Waived Its Objection to the Sufficiency of Service in May and June 2014 and Is in Default

NCS argues for the first time in its Reply that it was not timely served. Specifically, NCS contends that the June 20, 2014 service on Jackie Aviles, who was National Commercial Services, Inc.'s Administrative Manager, was ineffective.  In support, NCS, relying on the Declaration of Jovanovski, NCS' owner and agent for service of process, argues Aviles "would have never have accepted service of any legal document, and indeed, never accepted service of the Amended Complaint in this case." (Decl. of Zoran Jovanovski, hereinafter "Jovanovski Decl.," ¶¶ 11-13; Def.'s Reply 2). NCS admits on Reply it was initially served on May 21, 2014, with the original Summons and Complaint, but the Proof of Service is incorrect because it states that "Susanna Aleksanyan  (Assistant Manager)" was served and NCS has never employed anyone by that name.  (Jovanovski Decl. ¶ 3: Def.'s Reply 2 n.1).  Plaintiff argues since it is not proper for the Court to consider the Jovanovski Declaration, NCS' Motion to Vacate the Default is utterly unsupported by evidence.  Additionally, Plaintiff contends that the Proof of Service on Aviles shows that proper service was made and that the unsupported argument of counsel cannot overcome the presumption of proper service.

In this case, the undersigned finds that NCS has waived any challenge to sufficiency of service of process because it did not raise the challenge in its initial brief in support of its Motion to Vacate Default.  An entry of default under Rule 55(a) of the Federal Rules of Civil Procedure is appropriate when the party against whom a judgment

10

for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise. Thomas v. Bank of Am., N.A., 557 F. App'x 873, 875 (11th Cir. 2014); Fed. R. Civ. P. 55(a). When service of process is insufficient, the district has no power to render a default judgment or enter default because service of process is a jurisdictional requirement and the court lacks personal jurisdiction over a defendant who has not been served. Thomas, 557 F. App'x at 875; In re Physicians Reliance Ass'n, Inc., 415 F. App'x 140, 142 (11th Cir. 2011); Hemispherx Biopharma, Inc. v. Johannesburg Consol. Inv., 553 F.3d 1351, 1360 (11th Cir. 2008). Thus, in such situations, the district court has good cause to set aside entry of default. Thomas, 557 F. App'x at 875; In re Physicians Reliance, 415 F. App'x at 142. The Eleventh Circuit has also found, however, "that a party's right to dispute personal jurisdiction on insufficient service of process grounds is waived if the party fails to assert that objection in [its] first Rule 12, other initial pleading, or general appearance." In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1300 (11th Cir. 2003) (citing Ladder Man, Inc. v. Mfr's. Distrib. Servs., Inc., 234 F.3d 1268 (6th Cir. 2000) and Swaim v. Moltan Co., 73 F.3d 711, 718-19 (7th Cir. 1996)). In that vein, the Eleventh Circuit has further concluded that when a party challenges a default judgment, challenges for insufficient service of process are waived unless squarely raised in the Motion. In re Worldwide Web Sys., 328 F.3d at 1300. While the Eleventh Circuit has not specifically examined whether challenges to entry of default are similarly treated, there is no logical basis for differential treatment.

11

In this case, NCS' initial Motion to Vacate Default did not challenge the sufficiency of service of process.  The closest NCS' opening brief came to challenging service of process was the following passage in the facts section of NCS' opening brief:

> The Amended Complaint was allegedly served on NCS on June 20, 2014, by leaving a copy with an employee of NCS.  See D.E. 18.  It is clear from the service affidavit that the registered agent, Zoran Jovanovski, was not served as intended by the Summons.  See id.  Because the registered agent was not served, but only on a mid-level employee, the corporate officers did not immediately learn of the Amended Complaint.  Upon learning of the Amended Complaint, however, NCS's local California attorney contacted Plaintiff's counsel in an attempt to resolve the matter.

(Def.'s Br. 2).  At no point within the brief did NCS argue that such service did not comport with Rule 4 of the Federal Rules of Civil Procedure or that the Court did not have personal jurisdiction over NCS.  Instead, NCS' discussion of service within the initial brief was directed at persuading the Court that the default was not willful.  It also appears that NCS initially conceded the service issue when NCS admitted that its failure to timely respond to the Amended Complaint was neglectful, but not willful, and requested that NCS be given seven additional days to respond to Plaintiff's Amended Complaint.  (Def.'s Br. 4, 8 ("As stated above, NCS's failure to timely respond to the Amended Complaint was not willful inaction, but the result of excusable neglect.").  Furthermore, although Plaintiff filed two Proofs of Service of NCS, one in May and one in June, NCS' opening brief never mentions the May 2014 Proof of Service.[1]

_____

[1] NCS' discussion of service is confusing to say the least.  NCS states in its Reply brief that when it referenced the service of the Amended Complaint on a mid-level employee in its opening brief, that it intended to refer to service of the original complaint.  Presumably, NCS is now arguing that it was served in May 2014 (the

12

Furthermore, NCS' argument on Reply that service was improper does not negate NCS' waiver.   NCS had a duty to present any argument that service was improper on its first appearance, not a later appearance.  In re Worldwide Web Sys, 328 F.3d at 1300. Additionally, NCS may not raise a new argument that service was not proper for the first time in a reply brief.  Federal courts generally do not consider new arguments presented for the first time in a reply brief.  McGinnis v. Am. Home Mortg., No. 5:11-CV-284 CAR, 2014 WL 2949216, at *9 n.85 (M.D. Ga. June 30, 2014); United States v. Bunch, No. 1:11-CR-136-JEC/AJB, 2012 WL 11799873, at *12 n.16 (N.D. Ga. Dec. 20, 2012). Although NCS contends that its arguments that service was improper simply respond to Plaintiff's assertions that service was proper, Plaintiff's discussion of this issue arose from what Plaintiff described as NCS' "tangential" and "half-hearted" argument that the default was not willful or culpable because it took some time after service for the Amended Complaint to make it to Jovanovski.  NCS never argued until NCS filed its Reply that this Court did not have personal jurisdiction due to improper service.  By not raising the argument of insufficient service until the Reply, NCS waived the argument.

---

Proof of Service indicates that Susanna Aleksanyan was served), but service only included the original Complaint.  NCS' argument is unclear, however, because the May 2014 Proof of Service indicates that the *Amended* Complaint was served at that time.  Notably, the docket indicates that the Amended Complaint had been filed five days before the May 21, 2014 service. Jovanovski admits in his Declaration that NCS was served with the Original Complaint on May 21, 2014, but indicates that NCS never employed anyone by the name of Susanna Aleksanyan.  (Jovanovski Decl. ¶¶ 3). Furthermore, while NCS' opening brief admits that a mid-level employee received service of Plaintiff's Amended Complaint in June, NCS' Reply brief indicates that NCS "has never been served with the Amended Complaint." (Def.'s Br. 2; Def.'s Reply 2).

13

See, e.g., <u>Natarajan v. CLS Bank Int'l</u>, No. 12-06479 (CCC), 2014 WL 1745024, at *2 n.4 (D. N.J. Apr. 30, 2014) (finding that personal jurisdiction argument raised for the first time on reply was waived); <u>Friedman v. Canteen Vending</u>, No. 3:09-CV-00403-LRH-VPC, 2011 WL 1344181, at *1 (D. Nev. Apr. 7, 2011) (refusing to consider venue argument raised for the first time on reply); <u>Summit Training Source, Inc. v. Mastery Techs., Inc.</u>, No. 1:00-CV-127 WAM, 2000 WL 35442327, at *3 (W.D. Mich. June 1, 2000) (personal jurisdiction argument raised for first time on reply was waived); <u>Ramer v. United States</u>, 620 F. Supp. 2d 90, 102 (D.D.C. 2009) (finding that improper service argument raised for first time on reply was waived).  According to a Return of Service docketed on June 8, 2014, NCS was initially served with the Summons, Complaint, and First Amended Complaint with exhibits on May 21, 2014.[2]  (Docket Entry 11).  A subsequent Return of Service was filed on July 1, 2014, indicating that NCS was served with the original and amended complaints on June 20, 2014.[3]  (Docket Entry 18).  NCS

---

[2] NCS admits that it was served with the *original* Complaint on May 21, 2014. <u>See</u> Jovanovski Decl. ¶ 3 ("On May 21, 2014, NCS was served with the original Complaint and Summons in the above captioned case.").  While NCS does not admit that it was served with the *Amended* Complaint on May 21, 2014, or June 20, 2014, challenges to default on insufficient service of process grounds are waived unless squarely raised in its motion to set aside default or default judgment.  <u>In re Worldwide Web Sys.</u>, 328 F.3d at 1299-1300.

[3] Even if the Court considered Jovanovski's Declaration and NCS' arguments regarding service on Reply, NCS' challenges to service would not be sufficient to rebut the presumption that the June Proof of Service was prima facie proof of valid service.  A signed return of service constitutes prima facie evidence of valid service. <u>See, e.g.</u>, <u>Insituform Techs, Inc. v. AMerik Supplies, Inc.</u>, 588 F. Supp. 2d 1349, 1353 (N.D. Ga. 2008) (concluding in the context of determining whether there was good cause for setting aside the entry of default, that a signed return of service constitutes prima facie evidence of valid service and that the presumption can only be overcome

14

has yet to file an answer to the Complaint or the Amended Complaint.  Thus, NCS is in default.

## B.   Default Should Not Be Set Aside

NCS further contends that the default should be set aside because its excusable neglect was good cause for the lateness of its response to the Summons and Amended Complaint.  NCS states that it did not willfully ignore the pending litigation, but instead attempted to resolve the litigation without the need to file a responsive pleading, but was careless in monitoring the suit.  NCS further contends that Plaintiff would not be prejudiced if the Court were to vacate the default and that it has meritorious defenses to

---

by strong and convincing evidence).  Plaintiff's June 19, 2014 Proof of Service indicates that Jacki Aviles (an Administrative Manager) was served.  Service upon NCS' Administrative Manager does not make service improper.  Service on a corporation has been found to be proper under Georgia law upon an agent whose position is such as to afford reasonable assurance that he will inform his corporate principal that such process has been served upon him.  Scott v. Atlanta Dairies Coop., 239 Ga. 721, 724 (1977).  Service on a corporation has been found to be proper under Georgia law for instance, upon a personal secretary who led the process servicer to believe that she was in charge of the office and authorized to accept service.  Nw. Nat'l Ins. Co. v. Kennesaw Transp., Inc., 168 Ga. App. 701, 702 (1983).  In any event, NCS never presents evidence of Aviles' position within NCS or argues Aviles' position within NCS was such that there was no reasonable assurance that she would be responsible enough to inform the corporate principal.  Instead, NCS contends that service could not have been made on Aviles because she would never have accepted service.  In support, NCS relies upon Jovanovski's Declaration that Aviles has been trained not to accept service and to instead inform Jovanovski or NCS' legal staff when service of NCS is attempted.  (Jovanovski Decl. ¶¶ 11-13).  Even if the Court were to consider Jovanovski's Declaration, Jovanovski's Declaration would not change the result of this case because Jovanovski's statement about what he expects that Aviles would have done under the circumstances based on her training is speculation.  NCS never submits any Affidavit from Aviles indicating whether she accepted service of Plaintiff's Complaint on behalf of NCS.  Thus, Jovanovski's Declaration is not sufficient to overcome Plaintiff's proof of valid service.

15

Plaintiff's claims against it.

Federal Rule of Civil Procedure 55 provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 further provides that "[t]he court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). The defaulting defendant bears the burden of establishing good cause. African Methodist Episcopal Church, Inc. v. Ward, 185 F.3d 1201, 1202 (11th Cir. 1999); Mallayev v. Cohen, No. 1:-7-CV-0094-JEC, 2010 WL 3834461, at *2 (N.D. Fla. Sept. 24, 2010); Insituform Techs., Inc. v. AMerik Supplies, Inc., 588 F. Supp. 2d 1349, 1352 (N.D. Ga. 2008). "'Good cause' is a mutable standard that varies from situation to situation and is not subject to a precise formula, but it is not 'so elastic as to be devoid of substance.'" Silverton Mortg. Specialists, Inc. v. Silverton Fin. Servs., Inc., Nos. 1:09-CV-01583-JOF, 1:10-CV-00890-JOF, 2010 WL 2490955, at *3 (N.D. Ga. June 15, 2010) (quoting Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948, 951 (11th Cir. 1996)). To determine whether "good cause" exists to set aside an entry of default, courts may consider whether (1) the default was culpable or willful; (2) setting aside the default would prejudice the non-defaulting party; (3) the party in default has a meritorious defense; and (4) the defaulting party acted promptly to correct the default. Id. (citing Compania Interamericana Export-Import, 88 F.3d at 951). Depending on the circumstances, the Court may also consider whether the public interest

16

was implicated and whether there would be significant financial loss to the defaulting party. Perez v. Wells Fargo Bank, N.A., 774 F.3d 1329, 1338 (11th Cir. 2014). "These factors are not talismanic," however, and "[w]hatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default." Compania Interamericana Export-Import, 88 F.3d at 951 (internal citation and quotations omitted). If a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief. Compania Interamericana Export-Import, 88 F.3d at 951-52. "[D]efaults are seen with disfavor because of the strong policy of determining cases on their merits." Fla. Physician's Ins. Co., Inc. v. Ehlers, 8 F.3d 780, 783 (11th Cir. 1993) (internal citations omitted).

       1.    Willfulness of the Default

This Court does not find that NCS had good cause for its default. While NCS contends that the default was not wilful, NCS does not present any facts tending to show that its failure to respond to the Summons and the Amended Complaint was not reckless disregard for the judicial proceedings. NCS admits that it "may have been careless in not monitoring the suit better," and additionally states that it was in settlement negotiations with Plaintiff. Even accepting NCS' version of events as true, NCS was generally aware of the pendency of the suit, but simply ignored the procedural requirements in this Court. NCS admits that it has been aware of this lawsuit for almost

AO 72A
(Rev.8/82)

five months prior to filing its Motion to Vacate Default. (Def.'s Br. 2 (admitting that a mid-level employee was served in June 2014 with the Amended Complaint, but the corporate officers "did not immediately learn of the Amended Complaint"; Def.'s Reply 2 & n.1 (explaining that it was referring to the May service of the Complaint within its opening brief, not the June 20, 2014 service and that while NCS was aware of the original Complaint, it was attempting to resolve the case without the need to file a responsive pleading); Jovanovski Decl. ¶¶ 3, 4 (admitting that NCS was served with the original Complaint and Summons on May 21, 2014, and that on June 20, 2014, upon Jovanovski's instruction, defense counsel contacted Plaintiff's counsel to discuss the lawsuit)).  NCS offers no explanation beyond its "carelessness" and the desire to settle the suit without the need for filing responsive pleadings for its failure to file an answer to the lawsuit.   Thus, it appears to this Court that NCS, at a minimum, recklessly disregarded court rules. Insituform Techs., 588 F. Supp. 2d at 1358-59 (N.D. Ga. 2008) (concluding that default was willful or culpable where defaulting defendant was aware of the pendency of the lawsuit, but attempted to negotiate a settlement instead of answering the lawsuit); cf. EEOC v. Mike Smith Pontiac GMC, Inc., 896 F.2d 524, 529 (11th Cir. 1990) (concluding that defaulting party offered no meaningful justification for engaging in the dilatory conduct which caused the default where counsel argued that default occurred because defaulting defendant was engaged in other litigation which consumed the attention of upper management and caused confusion and defaulting defendant waited almost four months after notice of appearance was filed to move to set

aside the default); <u>AMEX Assurance Co. v. Phelps</u>, No. CV413-062, 2015 WL 1032856, at *2 (S.D. Ga. Mar. 9, 2015) (finding default willful where defaulting defendant did not fail to answer as a result of technical hiccup or excusable conduct, but did not answer the suit because she was depressed and had not retained an attorney); <u>Davila v. Alcami Grp., Inc.</u>, No. 12-23168-CIV, 2013 WL 1934168, at *5 (S.D. Fla. May 9, 2013) (holding that defendant's reliance on a belief that settlement negotiations were ongoing was not sufficient excuse for failing to answer the suit).  Because reckless disregard for the judicial proceedings is present, the court need make no other findings in denying relief from default.  <u>S.E.C. v. Johnson</u>, 436 F. App'x 939, 945 (11th Cir. 2011); <u>Compania Interamericana Export-Import</u>, 88 F.3d at 951-52.

2.    <u>NCS Did Not Act Promptly to Correct the Default</u>

Moreover, a review of the remaining factors does little to help NCS' cause.  First, NCS does not show that it acted promptly to correct the default.  The default was entered on July 14, 2014, but NCS did not move to set aside the default until November 3, 2014, and still has not answered the Amended Complaint.  (Docket Entries 23, 38).  Although NCS' owner, Zoran Jovanovski, states in his Declaration that he did not learn of the default until October 16, 2014, Jovanovski does not state whether his former counsel was aware of the default prior to that time.  <u>Sloss Indus. Corp. v. Eurisol</u>, 488 F.3d 922, 936 (11th Cir. 2007) (explaining that defendant could not rely on attorney's failure to take appropriate action to defend the suit as excuse for failing to timely answer the complaint because defendant failed to act diligently in ensuring that his attorney was

19

adequately protecting his interests); <u>S.E.C. v. McNulty</u>, 137 F.3d 732, 740 (2d Cir. 1998) (explaining that where the attorney's conduct has been found to be willful, the willfulness will be imputed to the party himself where he makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit); <u>In re Arrow</u>, Nos. 10-28831-BKC-AJC, 10-28834-BKC-AJC, 2012 WL 314192, at *2 (Bankr. S.D. Fla. Feb. 1, 2012) (former counsel's failure to answer the complaint was not good cause to set aside default because counsel's conduct was imputed to defendant where defendant did not demonstrate that its former counsel was protecting its interests); <u>Ake v. Mini Vacations, Inc.</u>, 174 F.R.D. 110, 112-13 (M.D. Fla. 1997) (finding client has duty to monitor the progress of the case and to communicate with his attorney). The fact remains that even if Jovanovski was not aware of the actual entry of default, Jovanovski should have been as he and his counsel were aware of the existence of the suit and were in the process of negotiating with Plaintiff during the period of default. (Def.'s Br. 2 (admitting that a mid-level employee was served in June 2014 with the Amended Complaint, but the corporate officers "did not immediately learn of the Amended Complaint"); Def.'s Reply 2 & n.1 (explaining that NCS was referring to the May service of the Complaint within its opening brief, not the June 2014 service and that while NCS was aware of the original Complaint, it was attempting to resolve the case without the need to file a responsive pleading); Jovanovski Decl. ¶¶ 3-9). Thus, this Court cannot conclude that this factor militates in NCS' favor. <u>Contrast</u> <u>Sloss Indus. Corp.</u>, 488 F.3d at 935 (finding that defendant did not promptly remedy the default

20

where it moved to set aside the default more than three and a half months after it was served with process and over one month after the default judgment was entered); <u>AMEX Assur. Co.</u>, 2015 WL 1032856, at *2 (finding that defendant did not act promptly to rectify default because she failed to respond for over five months after entry of default); <u>In re Arrow Air</u>, 2012 WL 314192, at *3 (finding that defendant did not act promptly to correct default when defendant waited two and a half months after entry of default to move to set aside the default); <u>with</u> <u>Jackson v. Equifax Info. Servs.</u>, No. 1:14-CV-610-WSD, 2015 WL 348849, at *2 (N.D. Ga. Jan. 23, 2015) (defendant acted promptly to remedy default where defendant moved to set aside the default within two weeks of the Clerk's entry of default).

           3.    <u>NCS Does Not Present Sufficient Facts to Show That It Has a Meritorious Defense</u>

This Court also cannot conclude at this juncture that NCS has a meritorious defense. As Plaintiff argued, NCS' mere assertion of defenses is inadequate; and NCS must provide factual detail for each of its defenses, but failed to do so. When evaluating whether the defendant offered a meritorious defense, general denials and abstractions will not do. <u>In re Worldwide Web Sys.</u>, 328 F.3d at 1296. The moving party must make an affirmative showing of a defense that is likely to be successful. <u>In re Worldwide Web Sys.</u>, 328 F.3d at 1296. That means, the party must allege a defense that is legally cognizable and offer specific facts which, if proved at trial, would establish the defense. 10 James Wm. Moore et al., Moore's Federal Practice ¶ 55.70(2)(d) (3d ed. 2015); <u>see also</u> <u>Gibbs v. Air Canada</u>, 810 F.2d 1529, 1538 (11th Cir. 1987) (explaining that the

AO 72A
(Rev.8/82)

meritorious defense must be established by a clear and definite recitation of facts); Wortham v. Brown, No. CV 214-105, 2015 WL 2152826, at *3 (S.D. Ga. May 7, 2015) ("It is well settled that general denials and conclusive statements are insufficient to establish a meritorious defense; the movant must present a factual basis for its claim."); Mainsail Dev. v. Rusco Inv., No. 8:11-CV-45-T-33AEP, 2012 WL 5341132, at *3 (M.D. Fla. Oct. 29, 2012) (finding that although defendant's motion included more than a general denial of plaintiff's claims and included some factual allegations, defendant still failed to present a meritorious defense); In re Arrow Air, 2012 WL 314192, at *4 (holding that in order to make a sufficient showing of a meritorious defense, the defendant must present evidence of facts that, if proven at trial would constitute a complete defense); Old Republic Nat'l Title Ins. Co. v. S. Lakeland Airport, No. 8:10-CV-2613-T-33AEP, 2011 WL 3475355, at *3 (M.D. Fla. Aug. 9, 2011) (concluding that the defendant did not establish a meritorious defense where the defendant merely presented conclusory statements unsupported by plausible allegations of fact); Davis v. Oldham, No. 6:07-CV-941-Orl-31DAB, 2007 WL 4115292, at *5 (M.D. Fla. Nov. 16, 2007) ("The defendant must assert specific facts supporting the existence of a prima facie meritorious defense as opposed to generally denying the allegations announced in the complaint.").

      a.    NCS' Defense to the Claim that It Violated Section 1692g of the FDCPA Is Not Shown to Be Meritorious

Plaintiff contends that NCS violated the FDCPA because NCS did not send him the written notice required by Section 1692g(a) of the FDCPA, and in fact, never sent

22

him anything in writing.  (Am. Compl. ¶¶ 20-23, 45).  Section 1692g(a) requires that

within five days after the initial communication with a consumer, the debt collector must

provide the consumer with a written notice, sometimes referred to as the validation

notice, containing the amount of the debt, the name of the creditor to whom the debt is

owed, a statement that unless the consumer disputes the debt within thirty days of receipt

of the notice, the debt will be assumed to be valid, that if the consumer notifies the debt

collector in writing within the thirty day period that the debt is disputed, the debt

collector will obtain verification of the debt, and a statement that upon the consumer's

written request within the thirty day period that the debt collector will provide the

consumer with the name and address of the original creditor if the original creditor is not

the current creditor.  15 U.S.C. § 1692g(a); Caceres v. McCalla Raymer, LLC, 755 F.3d

1299, 1301 (11th Cir. 2014).  The absence of one or more of the statutory requirements

for the validation notice is actionable as a violation of 15 U.S.C. § 1692e. Caceres, 755

F.3d at 1303.

NCS contends that it has a meritorious defense to Plaintiff's claims that it violated

Section 1692g because Plaintiff's records[4] reflect that the validation notice required by

Section 1692g was sent to Plaintiff.  NCS further contends on Reply that the validation

notice required by Section 1692g was sent to Plaintiff on February 22, 2013.  NCS

supports its allegations in this regard with the Jovanovski Declaration, filed in

connection with NCS' Reply brief, which this Court has already concluded should not

---

[4] NCS does not identify the records to which is referring.

23

be considered.  The new facts offered on Reply should have been submitted with NCS'

opening brief in support of its argument in that brief.  Even if the Court considered

Jovanovski's Declaration, however, it would not change the result.  While NCS, through

Jovanovski's Declaration, states that it provided the notice required by Section 1692g,

the date sent, and the address NCS sent the notice to, NCS presents no specific facts

tending to show that the notice satisfied the requirements of Section 1692g.  NCS

presents no facts tending to show that the notice, for instance, contained the amount of

the debt, named the creditor to whom the debt is owed, or  included a statement that

unless the consumer disputes the debt within thirty days of receipt of the notice, the debt

will be assumed to be valid.  15 U.S.C. § 1692g(a).  Accordingly, without more factual

detail, this Court cannot conclude that NCS has set forth a meritorious defense.[5]  Cf.

Hall v. HSBC Mortg. Servs., Inc., 581 F. App'x 800, 802 (11th Cir. 2014) (explaining

that plaintiff could not survive motion to dismiss with claim that the notice defendant

sent did not satisfy the requirements within the security deed where the plaintiff did not

---

[5] Even if NCS' defense in this regard could be deemed meritorious despite the absence of factual detail about the contents of the notice, the presence of this defense would not provide a strong justification for setting aside the entry of default.  NCS' conduct in failing to respond to Plaintiff's Amended Complaint was culpable and the value of the claim is not very high.  Plaintiff seeks statutory damages in the amount of $1,000 for the claim.  While Plaintiff also seeks actual damages for emotional and mental distress stemming from each of his FDCPA claims, Plaintiff presents no specific facts indicating that he suffered emotional distress as a result of the mere failure to send the validation notice.  While Plaintiff would be entitled to his reasonable costs and attorneys' fees if his claim is successful, the amount of reasonable costs and attorneys' fees necessary to prosecute just the Section 1692g claim on default judgment should not be high.

describe the actual content of the defendant's notice or attach the notice to the complaint).

b.    Violation of Section 1692e(2)(A) of the FDCPA

Plaintiff further contends that NCS violated the FDCPA when NCS falsely represented the amount and legal character of the debt in violation of 15 U.S.C. § 1692e(2)(A).  (Am. Compl. ¶ 45).  Specifically, Plaintiff contends that NCS falsely represented the amount and legal character of the debt because Thrifty had advised him that he had a zero balance, but subsequently sent him multiple bills showing differing amounts of the debt and therefore, the amount that NCS stated that Plaintiff owed was not correct.  (Am. Compl. ¶¶ 11-23, 45).  NCS contends that Plaintiff's claim fails because NCS relied on the amount reported to it by the creditor when speaking with Plaintiff and reporting the debt.

NCS' defense fails as a matter of law.  The FDCPA generally prohibits debt collectors from using any false, deceptive, or misleading representation in connection with the collection of a debt.  15 U.S.C. § 1692e; Hepsen v. Resurgent Capital Servs., LP, 383 F. App'x 877, 881 (11th Cir. 2010).  That means that when the debt collector attempts to collect the debt, it must state the correct amount of the debt.  15 U.S.C. § 1692e(2)(A).  The FDCPA does not require proof of an intentional violation or the debt collector's knowledge that the amount is incorrect, and is therefore described as a strict liability statute.  Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1270-71 (11th Cir. 2011) (holding that "the FDCPA typically subjects debt collectors to liability even when

25

violations are not knowing or intentional," but "affords a narrow carve-out to the general rule of strict liability, known as the 'bona fide error' defense"); <u>Hepsen</u>, 383 F. App'x at 881-82; <u>Smith v. Nat'l Cred. Sys., Inc.</u>, No. 1:13-CV-4219-WSD, 2014 WL 2003025, at *6 (N.D. Ga. May 15, 2014); <u>McDermott v. Marcus, Errico, Emmer & Brooks, P.C.</u>, 911 F. Supp. 2d 1, 59 (D. Mass. 2012) ("Although a debt collector is not necessarily required to take affirmative steps to verify the creditor's debt, the debt collector remains liable for including an incorrect amount unless he can establish the bona fide error defense."); <u>Gilmore v. Account Mgmt., Inc.</u>, No. 1:08-CV-1388-JOF-LTW, 2009 WL 2848278, at *7 (N.D. Ga. Apr. 27, 2009) (explaining that the FDCPA imposes strict liability on the debt collector for misstatements of the amount of debt owed and does not require intentional conduct on the part of the debt collector).  While the FDCPA does not require that a debt collector verify debts from its clients before sending a demand to a debtor, a debt collector is still liable for sending a demand letter to a debtor that is inaccurate.  <u>Hepsen</u>, 383 F. App'x at 882 (explaining that debt collector could still be liable under 1692e's provisions precluding a debt collector from attempting to collect an inaccurate debt, even if the FDCPA does not explicitly require that the debt collector verify the debt before sending a demand).  Thus, this Court cannot agree with NCS that its reliance on the creditor's representations excuses it from accurately stating the amount of debt.  Accordingly, NCS' reliance on the creditor's representations as to the amount of debt is not a meritorious defense to Plaintiff's claims pursuant to 1692e(2)(A).

c.      Violation of Section 1692e(8) of the FDCPA

Plaintiff also contends that NCS violated Section 1692e(8) of the FDCPA when NCS made false representations to the credit reporting agencies.  NCS contends that its reliance upon the amount Thrifty indicated Plaintiff owed when reporting the debt to credit reporting agencies is a meritorious defense to Plaintiff's Section 1692e(8) claim. NCS does not present sufficient facts to support a valid defense.  Section 1692e makes it a violation for a debt collector to use false, deceptive, or misleading representations in connection with the collection of a debt.  Section 1692e(8) provides that it is a violation of Section 1692e for a debt collector to "[communicate] . . . to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."  15 U.S.C. § 1692e(8).  While Section 1692e generally imposes strict liability for violations, Section 1692e(8) makes it a violation only where the plaintiff can show that the defendant knew or should have known the information it was communicating to be false. 15 U.S.C. § 1692e(8); Wright v. Specialized Loan Serv., No. 1:14-CV-01587-JLT, 2014 WL 5308633, at *5 (E.D. Cal. Oct. 16, 2014) (citing Clark v. Capital Credit and Collection Servs., 460 F.3d 1162, 1176 n.11 (9th Cir. 2006).  The fact that NCS relied on Thrifty's representations, without more, however, does not demonstrate that NCS did not or should not have known that the information it was providing to the credit reporting agencies was false. Indeed, according to the facts presented in the Amended Complaint, Plaintiff disputed the debt with NCS before NCS reported information regarding the amount of debt to the

27

credit reporting agencies.  After having numerous conversations with Thrifty and a prior collector about the amount of the indebtedness, Plaintiff disputed the debt when a representative from NCS tried to collect the debt.  (Am. Compl. ¶¶ 12-23).  Plaintiff states that he contacted NCS on two separate occasions and spoke with representatives of NCS and discussed that he disputed the debt.  (Am. Compl. ¶¶ 20-21).  According to Plaintiff, the NCS' representative told Plaintiff that NCS had "no information in the file concerning the debt; that additional information and documentation would be obtained from Thrifty and that NCS would return Mr. Carlisle's call," but no one from NCS has spoken with Plaintiff or sent him any letters.  (Am. Compl. ¶¶ 22-23).  Instead, NCS reported negative information about Plaintiff to the credit reporting agencies.  (Am. Compl. ¶ 24-26).  Given that NCS does not provide any facts about what it did to investigate Plaintiff's earlier dispute into the amount of the debt, what detail it communicated to Thrifty about the substance of Plaintiff's dispute, or what Thrifty told NCS with regard to the dispute, this Court cannot conclude that NCS should not have known that the balance it was reporting was incorrect.  Indeed, based on the facts as presented in the Amended Complaint, NCS never reported to Plaintiff the results of its investigation into Plaintiff's dispute of the debt.  (Am. Compl. ¶¶ 22-23).  Thus, it is reasonable to infer that NCS did not actually investigate Plaintiff's debt before initially reporting to the credit reporting agencies the amount Plaintiff owed.  Nothing within NCS' Motion to Vacate Default addresses this reasonable inference.  Had NCS' performed an adequate investigation of Plaintiff's dispute, it is possible that NCS would

28

have discovered that the amount it was reporting was unsupported.  Thus, this Court cannot conclude based on the scant facts presented by NCS that NCS should not have known that the amount of debt was incorrect when it reported the debt to the credit reporting agencies.  Thus, this Court cannot conclude that NCS may avoid the penalties stemming from a violation of 1692e(8) simply because it relied on the amount of debt that Thrifty said Plaintiff owed.

Moreover, accepting the facts as stated in the Complaint as true, NCS should have known that the information it was providing could be incorrect because not only had Plaintiff previously disputed the debt, but there were conflicts in the information NCS reported to the three credit reporting agencies.  According to Plaintiff's Amended Complaint, while NCS reported the same amount of debt to each of the credit reporting agencies, NCS reported to Experian that the payment status was seriously past due, to Equifax that the payment status was unpaid, and to Trans Union that the payment status was "charged off to bad debt."  (Am. Compl. ¶¶ 24-26).  Furthermore, NCS' stated defense does not apply to the remainder of Plaintiff's Section 1692e(8) claim that NCS failed to report to the credit reporting agencies that Plaintiff had disputed the debt. (Am. Compl. ¶ 45 ("Defendant NCS's violations of the FDCPA include . . . making false representations to Trans Union, Equifax and Experian in violation of 15 U.S.C. § 1692e(8) by, inter alia, failing to report that Mr. Carlisle had disputed the debt.").

NCS also contends that it has a valid defense to Plaintiff's Section 1692e(8) claim because it maintains policies and procedures to report debts as disputed if it is on notice

that the debt is disputed.  The FDCPA affords "a narrow carve-out to the general rule of strict liability, known as the 'bona fide error' defense." <u>Owen</u>, 629 F.3d at 1270-71. The bona fide error defense insulates debt collectors from liability when they have failed to comply with the Act's strict requirements. <u>Hepsen</u>, 383 F. App'x at 882.  A defendant asserting the bona fide error defense must show its violation of the FDCPA was unintentional; was a bona fide error; and occurred despite the existence of procedures reasonably adapted to avoid violations of the FDCPA.  <u>Hepsen</u>, 383 F. App'x at 882. A bona fide error is an error made in good faith resulting from a genuine mistake. <u>Hepsen</u>, 383 F. App'x at 882.  This Court does not agree with NCS that it has alleged a meritorious bona fide error defense to Plaintiff's FDCPA claims.  As noted above, the defaulting party may not offer a meritorious defense with general denials and abstraction.  <u>In re Worldwide Web Sys.</u>, 328 F.3d at 1296.  NCS fails to allege any facts in support of the defense which, if proven, could establish the defense.  Instead, NCS alleges only conclusions that it meets the requirements of the defense.  (Def.'s Br. 6 ("Here, NCS maintains policies and procedures to report debts as disputed if at the time of credit reporting NCS is on notice that the debt is disputed.").  Indeed, NCS does not allege any facts tending to show that its alleged failure to report that Plaintiff disputed the debt was unintentional and resulted from a genuine mistake or any specific facts tending to show the substance of procedures it reasonably adapted to avoid violations of the FDCPA.  <u>See, e.g.</u>, <u>Coniglio v. Bank of Am.</u>, No. 8:14-CV-01628-EAK-MAP, 2014 WL 6882294, at *3 (M.D. Fla. Dec. 4, 2014) (rejecting argument that bona fide

error defense was meritorious defense supporting the notion that default judgment should be set aside where debt collector did not explain the procedures used or the manner in which they were adapted to avoid the error).  Due to the absence of factual allegations in support of NCS' defense, this Court cannot conclude that NCS' bona fide error defense is meritorious.  In re Worldwide Web Sys., 328 F.3d at 1296; United States v. One 1978 Piper Navajo PA-31 Aircraft, 748 F.2d 316, 319 (5th Cir. 1984) (holding that conclusory allegations were insufficient to present a meritorious defense); Old Republic, 2011 WL 3475355, at *3 (finding that defaulting party failed to establish a meritorious defense when it merely offered affirmative defenses supported by conclusory statements); Turner v. Smith, Dean & Assoc., No. 8:10-CV-1665-JDW-AEP, 2011 WL 589473, at *2 (M.D. Fla. Feb. 10, 2011) (concluding that defaulting party did not make an affirmative showing of a defense that was likely to be successful because defaulting party only presented conclusory statements unsupported by plausible allegations of fact).

### d.    Violation of Section 1681s-2(b) of the FCRA

Plaintiff contends that NCS also violated Section 1681s-2(b) of the FCRA when NCS asserted that Plaintiff owed a debt in response to verification requests from Equifax and Trans Union, failed to fully investigate his dispute that he did not owe NCS anything, failed to review all of the information regarding his alleged debt with NCS, failed to accurately respond to verification requests by Equifax and Trans Union, failed to accurately report the results of an adequate investigation to other credit reporting

agencies, and failed to correct NCS' own internal records in order to prevent re-reporting of inaccurate representations to consumer reporting agencies. (Am. Compl. ¶ 78). NCS contends that it has a meritorious defense because, in response to the verification requests, NCS confirmed with the creditor that the amount being demanded was the amount owed and thereafter, responded to the verification request that the balance was being reported correctly.

The FCRA requires that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). The FCRA also requires furnishers of credit information to investigate the accuracy of said information upon receiving notice of a dispute from a consumer reporting agency. 15 U.S.C. § 1681s-2(b). Plaintiff brings his claim pursuant to 15 U.S.C. § 1681s-2(b). A consumer has a private right of action against a furnisher of information, for violations of Section 1681s-2(b) if, for instance, the furnisher, after receiving notice of the consumer's dispute from a credit reporting agency, fails to conduct a reasonable investigation with respect to the disputed information or fails to report the results of the investigation to the consumer reporting agency. 15 U.S.C. § 1681s-2(b); Peart v. Shippie, 345 F. App'x 384, 386 (11th Cir. 2009); Hinkle v. Midland Credit Mgmt., No. CV 313-033, 2015 WL 74267, at *8 (S.D. Ga. Jan. 6, 2015). A private right of action against a furnisher only arises under Section 1681s-2(b) after the furnisher has received notice of a dispute regarding the allegedly inaccurate information from a consumer

reporting agency. <u>Anderson v. EMC Mortg. Corp.</u>, 631 F.3d 905, 907 (8th Cir. 2011) (holding that the duties of a furnisher of credit information under 15 U.S.C. § 1681s-2(b) are triggered by notice that its information is being disputed from a CRA, not from the consumer); <u>Peart</u>, 345 F. App'x at 386 (holding that § 1681s-2(b) "can be enforced through a private right of action, but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency."); <u>Green v. RBS Nat'l Bank</u>, 288 F. App'x 641, 642-43 (11th Cir. 2008), <u>cert den'd</u>, 129 S. Ct. 929 (2009).

NCS argues it reasonably investigated Plaintiff's dispute because after receiving notification of the dispute, it confirmed with the creditor that the amount being demanded was the amount owed and verified to the consumer reporting agencies that the balance was being reported correctly. While this Court could certainly imagine circumstances in which contacting Thrifty could amount to a reasonable investigation of the dispute, NCS does not offer sufficient facts for the Court to so conclude in this case. The pertinent question is whether a furnisher's investigation procedures were reasonable in light of what the credit reporting agencies told it about the nature of the dispute. <u>Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1155 (9th Cir. 2009); <u>Alston v. United Collections Bureau</u>, No. DKC-0913, 2014 WL 859013, at *7 (D. Md. Mar. 4, 2014). Merely confirming the amount owed with Thrifty may not be sufficient under every circumstance. <u>Cf.</u> <u>Chiang v. Verizon New England Inc.</u>, 595 F.3d 26, 40 (1st Cir. 2010) (holding that what is a reasonable investigation by a furnisher may vary depending on the circumstances); <u>Johnson v. MBNA Am. Bank, NA</u>, 357 F.3d 426, 430-

33

31 (4th Cir. 2004) (holding that creditor's investigation into consumer's dispute that she did not apply for the account and was not legally obligated to pay was not reasonable where creditor merely confirmed that the name and address sent by the consumer reporting agencies were the same as the name and address listed on its computer system and did not do anything to verify the information in its computer system). For instance, a more limited investigation may be appropriate where the consumer reporting agencies provide the furnisher with vague or cursory information about a consumer's dispute. Seamans v. Temple Univ., 744 F.3d 853, 866 (3d Cir. 2014) (finding that where consumer reporting agency provided considerable information about the nature of the dispute and furnisher allotted only a minimal amount of time to investigate each claim, investigation procedures were not reasonable); Edeh v. Midland Credit Mgmt., 413 F. App'x 925, 926 (8th Cir. 2011) (finding that where credit reporting agencies provided little detail as to the basis for dispute, it was reasonable for furnisher to check the information it received from seller of the debt to verify the debt); Chiang, 595 F.3d at 38 (alluding to the notion that merely confirming with the creditor that the information submitted is accurate may not be sufficient if the circumstances indicate that a more searching inquiry may have been necessary); Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005) (finding that collector's investigation into consumer's allegations of fraud, which consisted of verifying name, address, and date of birth of account holder, was reasonable because collector received scant information regarding the nature of the dispute). Additionally, the manner in which NCS contacted Thrifty

may play a part in whether NCS' investigation was reasonable.  For instance, if the credit reporting agencies indicated to NCS that Plaintiff disputed the balance owed and furnished to the credit reporting agencies because Thrifty initially told the consumer that the consumer's balance has been paid in full and then subsequently indicated that the consumer owes multiple inconsistent amounts, then it might not be sufficient for NCS to merely report the balance as indicated by Thrifty.  NCS would have a duty to report to Thrifty the nature of the dispute as reported to NCS by the credit reporting agencies and at a minimum, obtain an explanation for the differing amounts Thrifty reported to the consumer or some other information showing that Thrifty researched the actual dispute presented.  Thus, more information is needed in this case to determine whether NCS' confirmation with Thrifty that the amount demanded was the amount owed was sufficient.  In order to establish that this defense may be meritorious, NCS, at a minimum, should have identified the information it received about Plaintiff's dispute, specified the information it provided to Thrifty regarding the dispute, and communicated the substance of the information that Thrifty provided to it regarding the results of its investigation, so that the Court may determine whether it could have been reasonable for NCS to stop there with its investigative efforts.  Gorman, 584 F.3d at 1155 ("By its ordinary meaning, an 'investigation' requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute."); Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611, 616, 620 (6th Cir. 2012) (cursory confirmation of account status insufficient); Edeh v. Equifax Info. Sys.,

974 F. Supp. 2d 1220, 1225-28, 1237-38 (D. Minn. Sept. 24, 2013) (concluding that even though Equifax verified the account balance with furnisher, Equifax's investigation was not reasonable because Equifax did not provide full information to furnisher about the nature of the dispute including letters from furnisher to consumer stating that the consumer's balance was paid in full and information about the consumer's check paying off the balance); Van Veen v. Equifax Info., 844 F. Supp. 2d 599, 606-07 (E.D. Pa. 2012) (investigation was not reasonable where furnisher merely verified account balances to conclude that consumer's account had $64 balance which had been due and account had been charged off but did not investigate the consumer's statement that the creditor sent him a letter indicating that it had adjusted the account down to zero due to incorrect billing). NCS' bare allegations used to support the defense is not sufficient for this Court to determine whether the defense could be meritorious.

4.    Plaintiff Has Shown That the Delay Prejudices Him

Finally, Plaintiff has shown that he would suffer prejudice as a result of the delay. Plaintiff argues NCS' counsel has indicated to him that NCS' financial condition has weakened; thus, if the case were further delayed, any judgment that is obtained may not be able to be paid by NCS. Also, NCS does not dispute that its financial condition is deteriorating or that any further delay in the suit may result in its inability to pay a judgment. Instead, NCS argues these are normal risks in a lawsuit. This Court agrees with Plaintiff that NCS' delay of the suit enhances the risk that Plaintiff could not recover from NCS and therefore prejudices Plaintiff. Additionally, where no factual

36

basis for a meritorious defense is shown to exist, the delay and expense in vindicating the Plaintiff's rights amounts to an undue prejudice. <u>Wortham</u>, 2015 WL 2152826, at *4; <u>Davis</u>, 2007 WL 4115292, at *5; <u>Turner Broadcasting Sys. v. Sanyo</u>, 33 BR. 996, 1003 (Bankr. N.D. Ga. 1983). Based on the four factors discussed above, this Court concludes that NCS has not shown good cause for setting aside the entry of default. Accordingly, this Court **RECOMMENDS** that NCS' Motion to Vacate Default should be **DENIED**. Docket Entry [38].

### <u>PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AND TO QUASH</u>

On February 22, 2015, Plaintiff filed his Motion for Protective Order and to Quash Defendant Experian's Notice of Plaintiff's Deposition Duces Tecum that Experian's counsel served on February 19, 2015. Docket Entry [51]. Therein, Experian set Plaintiff's deposition for February 23, 2015, at defense counsel's office, and included twenty separate paragraphs of documents Experian expected Plaintiff to produce. In support of Plaintiff's request for a protective order, Plaintiff argues that four days was not sufficient time for him to prepare for the deposition or produce documents and that his deposition should be taken at his own counsel's office, not counsel for Experian. Plaintiff further contends that the Notice should be quashed with respect to the requested documents because the requests for documents are overbroad and irrelevant to the issues of this case. Plaintiff finally requests that the discovery period be extended and that a discovery conference should be set. Experian did not file a response in opposition to Plaintiff's Motion.

This Court agrees with Plaintiff that four days was not sufficient time to prepare for a deposition or to prepare documents responsive to Experian's requests. Additionally, this Court agrees with Plaintiff that his deposition should be held at his own attorney's office.   Accordingly, Defendant Experian's Notice of Plaintiff's Deposition Duces Tecum is **QUASHED**.  Docket Entry [51].  Because this Court has already quashed Experian's Notice of Plaintiff's Deposition Duces Tecum, Plaintiff's individual objections to Experian's document requests are **MOOT**.  Plaintiff further requested the Court extend discovery and set a discovery schedule for the completion of written discovery and remaining depositions.  Plaintiff's Motion is **GRANTED**.  The Court will hold a discovery conference via telephone on Tuesday, June 23, 2015, at 3:00 p.m., to set a discovery schedule addressing the remaining discovery matters.  Counsel for Plaintiff, Defendant Experian, and Defendant Equifax are required to attend.  The Court will host the call and will contact counsel for Plaintiff, Experian, and Equifax at the telephone numbers indicated on the docket unless the parties notify the Court of a different telephone number to use.

## CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that National Commercial Services, Inc.'s Motion to Vacate Default be **DENIED**.  Docket Entry [38].  Plaintiff's Motion to Strike or Disregard Declaration of Zoran Jovanovski is **GRANTED**.  Docket Entry [43].  Finally, Plaintiff's Motion for Protective Order and to Quash is **GRANTED**.  Docket Entry [51].

AO 72A
(Rev.8/82)

**SO ORDERED AND REPORTED AND RECOMMENDED**, this  12   day of June, 2015.

/s/Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

39

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROLAND CARLISLE,

     Plaintiff,

v.

NATIONAL COMMERCIAL
SERVICES, INC., et al.,

     Defendants.

CIVIL ACTION NO.
1:14-CV-515-TWT-LTW

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

     Attached is the report and recommendation of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636 and this Court's Local Rule 72.1C. Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

     Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the report and recommendation **within fourteen (14) days of the receipt of this Order**. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the district court. If no objections are filed, the report and recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings

will be limited to a plain error review.  United States v. Slay, 714 F.2d 1093 (11th Cir. 1983), cert. denied 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984).  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  Mitchell v. United States, — F. App'x —, 2015 WL 2145573, at *3 (11th Cir. May 8, 2015); 11th Cir. R. 3-1.  In the absence of a proper objection, however, the appeals court may review the matter on appeal for plain error if necessary in the interest of justice.  Mitchell, 2015 WL 2145573, at *3; 11th Cir. R. 3-1.

The Clerk is directed to submit the report and recommendation with objections, if any, to the district court after expiration of the above time period.

**SO ORDERED**, this   12   day of June, 2015.

s/Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE