\IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROLAND CARLISLE,

     Plaintiff,

v.

                             CIVIL ACTION NO.
                             1:14-CV-515-TWT-LTW

NATIONAL COMMERCIAL
SERVICES, INC., et al.,

     Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This case is presently before the Court on Defendant Experian Information Solutions, Inc.'s ("Experian") Motion for Summary Judgment and Plaintiff Roland Carlisle's ("Plaintiff") Motion to Strike or Disregard Declaration of Kimberly Hughes. (Doc. 61). For the reasons explained below, Experian's Motion for Summary Judgment should be **DENIED**. (Doc. 61). Plaintiff's Motion to Strike or Disregard Declaration of Kimberly Hughes is **DENIED**. (Doc. 67). Instead, arguments from Plaintiff's Motion to Strike have been considered as objections and are addressed herein when they concern evidence which is relevant and necessary for assessment of the summary judgment motion.

Also before the Court is Plaintiff's motion for a less than one-week extension of time to respond to Experian's summary judgment motion. (Doc. 62). For good cause shown, Experian's Motion is **GRANTED NUNC PRO TUNC**. (Doc. 62). The deadline for Plaintiff's response is extended to December 11, 2015.

**PLAINTIFF'S OBJECTIONS TO EVIDENCE WITHIN HIS
MOTION TO STRIKE DECLARATION OF KIMBERLY HUGHES**

On February 21, 2014, Plaintiff filed his Complaint in this Court, and subsequently amended his Complaint on May 16, 2014.  (Docket Entries 1, 6).  In Plaintiff's Amended Complaint, Plaintiff contends that Experian violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. when Experian failed to establish reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and files it maintained concerning Plaintiff, failed to conduct a timely and lawful reinvestigation, failed to forward all relevant information to Defendant National Commercial Services, Inc. ("NCS"), the furnisher, as part of its reinvestigation, failed to delete inaccurate information in his credit file, failed to maintain reasonable procedures to filter and verify disputed information in Plaintiff's credit file, and relied upon verification from a source it has reason to believe is unreliable.  (Am. Compl. ¶¶ 52-56, 72-76, 86-89).  Plaintiff further contends that Experian violated the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, et seq. ("GFBPA") when it engaged in conduct that violated the FCRA, including the reporting of information it knew, or should have known, to be false.  (Am. Compl. ¶¶ 86-89).

Experian contends that summary judgment should be granted as to Plaintiff's FCRA claims because it reported Plaintiff's credit information accurately and he has no evidence showing that its procedures and reinvestigation of his dispute were unreasonable.  Experian further contends that summary judgment should be granted as to Plaintiff's GFBPA claim because he has not offered any evidence showing an unfair

2

or deceptive act occurred, the evidence shows that Plaintiff's account was reported correctly at all times, and Experian complied with the reasonableness standards imposed by the FCRA.

Experian offers the Affidavit of Kimberly Hughes, who is its Compliance and Litigation Analyst, to support its summary judgment argument.  (Aff. of Kimberly Hughes, hereinafter "Hughes Aff.," ¶ 2).  Experian relies upon Hughes' Affidavit in its Motion for Summary Judgment to substantiate how it handled the reinvestigation of Plaintiff's account, establish its procedures for reporting credit information it receives, and explain its procedures for investigating and resolving consumers' disputes of the items appearing on their credit reports.  Plaintiff argues Hughes' Affidavit should be stricken because Experian did not identify Hughes as a witness in its Initial Disclosures and portions of the Hughes' Affidavit are not made based upon her personal knowledge. Plaintiff further contends that two exhibits, Experian's Exhibits B (Doc. 61-4) and G (Doc 61-9) should be stricken because they were not properly authenticated.

As a preliminary matter, because a Motion to Strike is not the appropriate vehicle for challenging the consideration of evidence in support of a Motion for Summary Judgment, Plaintiff's Motion to Strike will be treated as objections to evidence. Pinkerton & Laws Co. v. Roadway Express, Inc., 650 F. Supp. 1138, 1141 (N.D. Ga. 1986).  Therefore, this Court will address many of Plaintiff's objections to the admissibility of any evidence presented through affidavits or any other method either explicitly here or as part of its assessment of Experian's Motion for Summary Judgment.

Any objections not explicitly addressed in this section, will be considered in the Court's assessment of Experian's Summary Judgment Motion if the evidence becomes relevant to the Court's consideration of the Motion.  See Linscheid v. Natus Med. Inc., No. 3:12-CV-67-TCB, 2015 WL 1470122, at *1 (N.D. Ga. Mar. 30, 2015) (considering objections when the challenged evidence became relevant to the decision on the motion); Smith v. Se. Stages, Inc., 479 F. Supp. 593, 594-95 (N.D. Ga. 1977).

## I.     **Experian Did Identify Hughes as a Witness**

Plaintiff first contends that Hughes' Affidavit should be stricken because Experian did not identify Hughes as a witness having knowledge of discoverable information regarding his claims.  Under Rule 26(a)(1)(A)(i) of the Federal Rules of Civil Procedure, Experian was required to provide to Plaintiff "the name. . . of each individual likely to have discoverable information–along with the subjects of that information–that . . . [it] may use to support its claims or defenses."  Here, however, Experian disclosed Hughes as a witness in its Initial Disclosures, which were served on Plaintiff in July 2014. (Doc. 73-1, at 1; Doc. 73-2, at 6).  Experian explained at that time that Hughes had knowledge of its "credit reporting systems and procedures," which are the very subjects about which Hughes testified.  Under these circumstances, the Court finds that Experian properly disclosed Hughes as a witness.

## II.    **Hughes' Personal Knowledge of Statements Within Paragraphs 4, 7, and 9**

Plaintiff further contends that Paragraphs 4, 7, and 9 of Hughes' Affidavit should be stricken because they were not based upon her personal knowledge.  Specifically,

4

Plaintiff appears to argue Hughes' Affidavit does not set forth job duties she currently performs demonstrating that she is not currently familiar with the topics of her testimony.  Plaintiff argues Hughes moved from a Consumer Affairs Specialist position to a Compliance and Litigation Analyst in January 2011 and that it is not clear whether Hughes, in her new role as Compliance and Litigation Analyst, would have knowledge of Experian's current business record practices.  Plaintiff also insists that Hughes' Affidavit does not describe in detail current job duties which show that she is qualified to testify on many of the topics within the Affidavit.  Under Rule 56(c)(4), an affidavit used to support or oppose a summary judgment motion must be made on personal knowledge and show that the affiant is competent to testify on the matters stated.  Fed. R. Civ. P. 56(c)(4); McCaskill v. Ray, 279 F. App'x 913, 914-15 (11th Cir. 2008) ("Under Federal Rule of Civil Procedure 56(e), affidavits, supporting or opposing summary judgment, must be made on personal knowledge and must set forth facts that would be admissible evidence.").  Where the affiant clearly declares that the content of the affidavit is based on her personal knowledge and that the statements within the affidavit are true and correct, the district court is bound to accept the statements that the affidavit is based on personal knowledge is true unless the context demonstrates otherwise.   Martin v. Rumsfeld, 137 F. App'x 324, 326 (11th Cir. 2005); Glock v. Glock, No. 1:14-CV-3249-TWT, 2015 WL 8773434, at *2, — F. Supp. 3d — (N.D. Ga. Dec. 14, 2015); Brown v. Blue Cross & Blue Shield of Fla., Inc., No. 11-80390-CIV, 2011 WL 11532078, at *4 (S.D. Fla. Aug. 8, 2011); HomeBingo Network, Inc. V.

Chayevsky, 428 F. Supp. 2d 1232, 1238-39 (S.D. Ala. Apr. 21, 2006).

Here, Hughes states that in her capacity as Compliance and Litigation Analyst, her duties include analysis of Experian's credit reporting processes in connection with litigation filed by consumers against Experian and providing oral and written testimony in connection with her analysis. (Hughes Aff. ¶ 2). Hughes also asserts that she reviews Experian's policies, procedures, and systems as they relate to its consumer credit reporting business and makes recommendations to mitigate risks and improve various policies and procedures as appropriate. (Hughes Aff. ¶ 2). Hughes states: "Based upon my experience with Experian, I am very familiar with Experian's procedures pertaining to consumer disputes, Experian's procedures related to its credit reports, including the appearance of and policies and procedures regarding inquiries, and with the business records maintained by Experian's credit reporting division." (Hughes Aff. ¶ 5). Hughes further avers that the facts within her Affidavit are based upon her personal knowledge. (Hughes Aff. ¶ 5). Nothing within Hughes' Affidavit indicates that she is not currently familiar with, for instance, Experian's current business records' practices or the procedures used to assure accuracy of reported credit information. Indeed, Hughes' job duties as described in the Affidavit suggest that she is familiar with Experian's practices and procedures as indicated. (See Hughes Aff. ¶ 2 (explaining that as Compliance and Litigation Analyst, her duties include analysis and review of Experian's credit reporting processes, policies, procedures, and systems as they relate to the credit reporting business and mak[ing] recommendations to mitigate risks) ¶ 4 (explaining that as

Consumer Affairs Specialist, she served as a custodian of records with respect to entries that appear on credit reports and credit files as well as records of customer inquiries). While Hughes may not indicate that she is currently a records custodian, there is no reason that given her current duties, she would not maintain her familiarity with Experian's records systems.  Likewise, Plaintiff, who could have deposed Hughes during discovery, presents no evidence that suggest that Hughes is not familiar with Experian's practices and procedures.  Thus, the Court is bound to accept Hughes' averments that the contents in her Affidavit are based upon her personal knowledge. Therefore, Plaintiff's objections to Paragraphs 4, 7, and 9 of Hughes' Affidavit are **OVERRULED**.

## III.   <u>Hearsay</u>

Plaintiff further contends that Paragraphs 16-19 of Hughes' Affidavit are hearsay, are not based on Hughes' personal knowledge, and should not be considered. Paragraphs 16-19 stated as follows:

> 16.   In this matter, Thrifty purportedly sold the original debt to a collection agency by the name of JNR, and JNR later sold the debt to NCS.
> 17.   NCS began reporting its ownership of the Thrifty debt as an unpaid collection account to Experian in or about March 2013.
> 18.   On March 14, 2014, when processing the dispute, Experian transmitted the entire attorney's correspondence to NCS and reinvestigated the dispute with NCS.
> 19.   NCS verified the accuracy of Experian's reporting in response to Experian's reinvestigation of Plaintiff's dispute with NCS.

(Hughes Aff. ¶¶ 16-19).  Experian responds that it does not consider Paragraph 16 to be

material and does not attempt to defend it.  Accordingly, Plaintiff's objection to Paragraph 16 is **SUSTAINED**, and Paragraph 16 will not be considered.

While it is true that Plaintiff is responsible for demonstrating that Hughes' testimony lacked proper foundation and was not based on her personal knowledge, it is apparent here from the context of the materials before the Court that Hughes' testimony in Paragraphs 17-19 is not based on her personal knowledge and is hearsay.  Experian admits that Hughes' statement is based upon her general "knowledge of Experian's credit reporting practices and procedures," but does not indicate that she had any personal involvement in Experian's transactions in connection with Plaintiff's dispute of the NCS' account.

Indeed, Experian appears to admit that Hughes' statements were based on her interpretation of documents and not any personal involvement with the investigation at the time of Plaintiff's dispute. (Def.'s Resp. Br. 10, 11, 17).  In support of its argument that Paragraphs 17-19 are not hearsay, Experian refers the Court to the reasoning supporting the admissibility of Paragraph 10.  Therein, Experian argues documents relied upon by Hughes in establishing factual occurrences satisfy the business records exception.  Thus, Experian contends that Paragraphs 17-19 are not hearsay because they are based on upon business records and all of the documents relied upon in determining the factual occurrences laid out in Paragraph 17-19 of Hughes' Affidavit satisfy the business record exception.  In support, Experian argues in a conclusory manner that the underlying business records were kept in the course of regularly conducted activity of

its business, made at or near the time of the business activity by someone with knowledge, making the record was a regular practice of the activity, and there is no indication that they lack trustworthiness. (Def.'s Resp. to Pl.'s Mot. to Strike 13-14). Experian, however, does not provide any analysis or evidence satisfying these requirements. Additionally, Experian, which did not attach the records to Hughes' Affidavit, and neither identifies, nor produces the alleged business records upon which Hughes relied.

Because Hughes testified in her Affidavit regarding the contents of Experian's records, without supporting her testimony with the actual business records, there is no proof that the Hughes' testimony was supported by documents satisfying the business records exception. Testimony regarding the contents of business records, unsupported by the records themselves, by one without personal knowledge of the facts underlying the records constitutes inadmissible hearsay. See, e.g., In re Sung Ho Cha, 483 B.R. 547, 553 (Bankr. 9th Cir. 2012) (noting that "hearsay objection would be well grounded if the Debtors testified regarding the specific contents of the deed and Rappaport's testimony would run afoul of the hearsay rule if he testified regarding the specific provisions of the written document"); FRT 2011-1 Trust v. eHealthscreen, LLC, No. CV 213-107, 2016 WL 1595392, at *14 (S.D. Ga. Apr. 19, 2016); Kidd v. Jackson, No. 10-CV-4112 (SRN/SER), 2012 WL 6569293, at *3 (D. Minn. Dec. 17, 2012) (concluding that testimony about the contents of a document by someone who did not create the document is improper hearsay evidence); Snowdon v. A.W. Chesterton Co., 366 F.

Supp. 2d 157, 165 (D. Me. 2005) (finding that affidavit testimony, which simply described the content of the regulations and specifications was, in the absence of the documents themselves, nothing more than hearsay and is not entitled to any weight).

Experian further contends that even if the statements were hearsay, they are admissible because they can be reduced to admissible form at trial. It is clear that a district court may consider a hearsay statement when considering a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form. In this case, however, Experian does not present any evidence or other analysis demonstrating that the evidence in Paragraphs 17-19 above can be reduced to admissible form. Jones v. UPS Ground Freight, 683 F.3d 1283, 1293-94 (11th Cir. 2012) (explaining that a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible form); Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999); Fed. R. Civ. P. 56(c)(2) (explaining that "a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"); 11-56 Moore's Fed. Prac. § 56.91[2] (2016) (explaining that either party may rely upon evidence that is not in admissible form to support or dispute the existence of material fact at summary judgment stage if the evidence could be reduced to admissible form at trial). Again, Experian presents no evidence or analysis in support of its argument and the Court would simply be required to accept Experian's assertions at face value. Without more, the Court cannot infer that the records relied upon were covered under the business

records exception or that Hughes' testimony is covered by an exception to the hearsay rule.  Accordingly, Plaintiff's objections to Paragraphs 17-19 of Hughes' Affidavit are **SUSTAINED** and Paragraphs 17-19 will not be considered in connection with Experian's summary judgment motion.

## IV.   **Authentication of Exhibit G**

Finally, Plaintiff contends that Experian's Exhibit G should not be considered in connection with Experian's summary judgment motion because it has not been authenticated.  Experian argues in response that Exhibit G is admissible because a formal affidavit is not required and that a document may be "sufficiently authenticated taking into consideration the appearance, contents, substance, internal patterns, or other distinctive characteristics," in consideration of the circumstances.  Alternatively, Experian contends that the court may consider Exhibit G because it can be authenticated in short order at trial by Hughes.

Plaintiff responds that only a party opposing a summary judgment motion may rely upon evidence in inadmissible form which could be reduced to admissible evidence at trial.  This Court disagrees.  Either party may rely upon evidence that is not in admissible form to support or dispute the existence of material fact at summary judgment stage if the evidence could be reduced to admissible form at trial.  Rule 56(c)(2) of the Federal Rules of Civil Procedure explains that "a *party* may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  The fact that the Rule does not

limit the ability to object to the non-moving party, suggests that the moving party may submit evidence in inadmissible form to support a summary judgment motion if the evidence could be reduced to admissible form at trial. See 11-56 Moore's Fed. Prac. § 56.91[2] (2016) (explaining that under Rule 56, either party may rely upon evidence that is not in admissible form to support or dispute the existence of material fact at summary judgment stage if the evidence could be reduced to admissible form at trial). Indeed, courts within the Eleventh Circuit have permitted movants to present inadmissible evidence at summary judgment if it appeared that the evidence could be reduced to admissible form at trial. See, e.g., Lenning v. Brantley Cty., 579 F. App'x 727, 732 n.3 (11th Cir. 2014); see also EZ Title Pawn, Inc., No. 7:14-CV-32 (HL), 2016 WL 1259409, at *2 (M.D. Ga. Mar. 30, 2016); Peterson v. Corr. Corp. of Am., No. 5:14-CV-265-MW/CJK, 2015 WL 5698501, at *3 (N.D. Fla. Sept. 28, 2015). Thus, Experian may rely upon unauthenticated documents if they can be reduced to admissible form at trial. Snover v. City of Starke, 398 F. App'x 445, 449 (11th Cir. 2010). Proper authentication requires that the proponent of the evidence make out a prima facie case that the evidence is what it purports to be. United States v. Belfast, 611 F.3d 783, 819 (11th Cir. 2010). Evidence may be authenticated by its "appearance, contents, substance, internal patterns, or other distinctive characteristic of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). Testimony by a witness with knowledge that an item is what it is claimed to be may also authenticate a document. Fed. R. Evid. 901(b)(1). Here, Exhibit G appears to be Experian's ACDV directed to

12

NCS describing the nature of Plaintiff's dispute and requiring that it verify the accuracy of the debt, as well as NCS' response to Experian's inquiries in that regard.  (Def.'s Statement of Undisputed Facts ¶ 19; Def.'s Ex. G).  Plaintiff does not dispute that Exhibit G is what it purports to be or point to any evidence showing that the document is forged or inaccurate in anyway.  Indeed, Plaintiff repeatedly relies upon Experian's Exhibit G to support his rendition of the facts in his Response to Experian's Motion for Summary Judgment.  (Pl.'s Br. 1 ("Experian sent an ACDV form without more to NCS who confirmed the accuracy of the debt on the ACDV."), 8 (specifically relying upon Def.'s Ex. G), 17 (specifically relying upon Def.'s Ex. G), 22 ("Because Experian only communicated with NCS by means of an ACDV and failed to focus on the inconsistencies in Thrifty's demands it failed to conduct a reasonable investigation."), 23 (explaining why ACDV was insufficient), 27 (explaining why ACDV was insufficient); Pl.'s Aff. ¶ 8 (specifically relying upon Def.'s Ex. G), ¶ 43 (specifically relying upon Def.'s Ex. G to show that Experian's reinvestigation simply consisted of forwarding the ACDV to NCS), ¶ 62 (explaining that Experian's dispute resolution procedures did not work in his case because in response to his dispute of the debt, NCS merely verified the debt).  Additionally, Plaintiff does not dispute Experian's argument that Hughes can also authenticate the ACDV.  Hughes testified that Experian's practice is to send an "Automated Consumer Dispute Verification" form to the furnisher of credit information which identifies the consumer, identifies the basis for the consumer's dispute, and asks the furnisher to verify or amend the information reported.  (Hughes

Aff. ¶ 13). Thus, even if it is found that the ACDV form is not currently in admissible form, it appears clear that it can be reduced to admissible form at trial. Accordingly, Plaintiff's Objection to Exhibit G is **OVERRULED**, and this Court will consider Experian's Exhibit G in connection with the instant summary judgment motion.

## EXPERIAN'S MOTION FOR SUMMARY JUDGMENT

### I.   FACTUAL BACKGROUND[1]

Plaintiff Roland Carlisle rented a Chrysler 300 from Thrifty Car Rental on July 15, 2012, and paid a $350.00 deposit in connection with the rental of the car. (DSMF ¶¶ 1, 2). While Plaintiff was driving the car, the police pulled him over for a traffic infraction. (DSMF ¶ 3). The police searched the car, arrested Plaintiff for possession of marijuana, and impounded the car. (DSMF ¶¶ 4, 6; Pl.'s Dep. 128-29; Pl.'s Aff. ¶ 6).

---

[1] All facts taken directly from Experian's Statement of Material Facts (hereinafter "DSMF") remain undisputed. This Court must accept as admitted those facts in the moving party's statement that have not been specifically controverted with citation to the relevant portions of the record by the opposing party. LR 56.1B(2), (3), NDGa. Subjective perceptions, conclusory allegations, or allegations that are otherwise unsupported by record evidence do not create genuine issues of material fact in order to withstand summary judgment. See Chapman v. AI Transp., 229 F.3d 1012, 1051 n.34 (11th Cir. 2000) (en banc); Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989). Thus, this Court will not consider any fact, for instance, (1) not supported by citation to evidence (including a page or paragraph number); or (2) stated as an issue or legal conclusion. This Court will assess the admissibility of any evidence presented through affidavits or any other method and the objections thereto as part of its assessment of Experian's Motion for Summary Judgment. The Court will then rule on the evidence implicitly or explicitly in the consideration of the motion. See Friedlander v. Troutman, Sanders, Lockerman & Ashmore, 595 F. Supp. 1442, 1443 (N.D. Ga. 1984), rev'd on other grounds, 788 F.2d 1500 (11th Cir. 1986); Smith v. Se. Stages, Inc., 479 F. Supp. 593, 594-95 (N.D. Ga. 1977)

14

The car was later returned to Thrifty.  (Am. Compl. ¶ 10; Pl.'s Dep. 141; Pl.'s Aff. ¶ 6).

On July 20, 2012, Thrifty provided Plaintiff with a rental summary showing that after the application of the $350.00 deposit, a "Zero Balance" remained.  (Pl.'s Aff. ¶ 7, Ex. A).  Beginning on August 8, Thrifty sent seven letters to Plaintiff seeking payment for estimated repairs allegedly necessitated after Plaintiff's rental, compensation for the loss of use of the vehicle, administrative fees, appraisal fees, and towing fees.  (Def.'s Ex. C; Pl.'s Resp. to DSMF ¶¶ 7, 10-12).  Thrifty sought $1017.41 on August 8, 2012; $882.50 on August 10, 2012; and $1,782.61 on August 15, 2012, August 28, 2012, October 10, 2012, and October 30, 2012.  (Def.'s Ex. C; Pl.'s Resp. to DSMF ¶¶ 7, 10-12; Pl.'s Am. Compl. ¶¶ 12-14, Exs. B, C, D; Pl.'s Aff. ¶¶ 8-14).  Plaintiff's $350.00 deposit was retained by Thrifty.  (Pl.'s Dep. 140; Am. Compl. ¶ 11).  Plaintiff, as of October 1, 2015, had not paid any amounts requested by Thrifty, other than the $350.00 deposit, even though Thrifty demanded additional payment and threatened legal action. (DSMF ¶ 13).

Plaintiff was also contacted by JNR Adjustments and later, NCS, in connection with the collection of the Thrifty debt.  (Pl.'s Dep. 109, 116-17).  On September 25, 2012, Plaintiff received a letter indicating that it was from JNR Adjustments seeking to collect an $882.50 debt owed to Thrifty.[2]  (Pl.'s Aff. ¶ 17, Ex. I).  Plaintiff did not make

---

[2]   Experian objects to consideration of JNR's letter on the grounds that it had not been authenticated by an employee of JNR, Plaintiff lacked personal knowledge of the letter, and that the letter lacked foundation.   Plaintiff however properly authenticated the letter and laid a foundation for it when he testified that he received the letter on September 25, 2012, described the contents of the letter, and averred that

any payments to either collector.  (Pl.'s Dep. 110).

In March 2013, NCS reported the debt to Experian.  (DSMF ¶ 16; Pl.'s Resp. to DSMF ¶ 16).  On March 3, 2014, Plaintiff's counsel sent Experian a letter disputing the accuracy of the NCS item appearing on his credit report and requesting that Experian investigate the accuracy of the NCS report.  (Pl.'s Aff. ¶ 50, Ex. O; Def.'s Ex. E).  Counsel explained in his letter that after Plaintiff returned his Thrifty rental car, Thrifty provided Plaintiff with a receipt showing that all monies had been paid.  (Id.).  Plaintiff's counsel attached the "receipt" from Thrifty to the dispute letter.  (Def.'s Ex. E).  Counsel further explained that Thrifty subsequently claimed that additional amounts were due on the vehicle rental.  (Id.).  Plaintiff also stated that Thrifty later claimed that Plaintiff owed $1,782.  (Id.).  Counsel further explained that after Thrifty referred his account to NCS for collection, he called NCS to dispute the debt.  (Id.).  Plaintiff requested that NCS "substantiate that additional amounts were owed," but NCS did not provide the requested information.  (Id.).  Instead, the NCS representative informed Plaintiff that NCS did not have documentation regarding the account.  (Id.).  Although the NCS representative indicated that documentation would be obtained and that NCS would return Plaintiff's call, NCS never returned Plaintiff's call.  (Id.).

---

the letter was a true and accurate copy of the letter he received.  (Pl.'s Aff. ¶ 17).  See also, e.g., United States v. Hawkins, 905 F.2d 1489, 1494 (11th Cir. 1990); Navedo v. Nalcho Chem., Inc., 848 F. Supp. 2d 171, 201-02 (D.P.R. 2012); Talada v. City of Martinez, 656 F. Supp. 2d 1147, 1158 (N.D. Cal. Sept. 10, 2009).  Plaintiff also states that after he responded to the letter in writing, he received a call from a representative of JNR.  (Pl.'s Aff. ¶¶ 17-21).  Experian's objection is therefore **OVERRULED**.

AO 72A
(Rev.8/82)

Experian sent NCS an Automated Consumer Dispute Verification form ("ACDV") requesting that NCS verify the accuracy of the debt. (Def.'s Ex. G; Hughes Aff. ¶ 12). Experian described the dispute as follows: "Consumer states inaccurate information. Provide or confirm complete ID and account information." (Def.'s Ex. G). NCS responded on March 28, 2014, "Account information accurate as of date reported." (Def.'s Ex. G; Hughes Aff. ¶ 12). NCS also reported that the account was a collection account, that the balance was $2,071, that the amount past due was $2,071, and that the high credit was $1,782. (Def.'s Ex. G). Experian ultimately decided, based on information provided by NCS that Plaintiff's account as reported by Experian would not be changed as a result of Experian's investigation. (Def.'s Exs. G, H).

## II.   LEGAL ANALYSIS

### A.   Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of asserting the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Apcoa, Inc. v. Fid. Nat'l Bank, 906 F.2d 610, 611 (11th Cir. 1990). The movant is not required, however, to negate his opponent's claim; the movant may discharge his burden by merely "'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the

pleadings" and present competent evidence designating specific facts showing that there is a genuine disputed issue for trial; the non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. Id. at 324 (quoting Fed. R. Civ. P. 56(c)(1)).

While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is material when it is identified as such by the controlling substantive law. Id. at 248. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." Anderson, 477 U.S. at 249-50.

### B.   Plaintiff's FCRA Claims

Plaintiff contends that Experian violated Section 1681e(b) of the FCRA because it failed to establish and follow reasonable procedures to assure maximum possible

18

accuracy in the preparation of his credit reports it published and maintained.  Plaintiff further contends that Experian violated Section 1681i of the FCRA because  it failed to delete inaccurate information from his credit file after receiving notice of the inaccuracies, failed to conduct a timely reinvestigation, failed to forward all relevant information to NCS, failed to maintain reasonable procedures to verify disputed information in Plaintiff's credit file, and relied upon a source it has reason to believe is unreliable.  Experian contends that both Plaintiff's Section 1681e(b) and Section 1681i claims fail because Plaintiff fails to show that Experian reported its account inaccurately.

1.    <u>Accuracy of Experian's Credit File and Reporting</u>

In order to establish Plaintiff's Section 1681e(b) and Section 1681i claims, Plaintiff must ultimately show that Experian maintained inaccurate information about the NCS account in his credit file and reported the information inaccurately.  Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting.  <u>Collins v. Experian Info. Sys.</u>, 775 F.3d 1330, 1332 (11th Cir. 2015).  "The FCRA creates a private right of action against consumer reporting agencies for the negligent, or willful violation of any duty imposed under the statute."  15 U.S.C. §§ 1681n, 1681o; <u>Collins</u>, 775 F.3d at 1333.  The Fair Credit Reporting Act requires that "[w]henever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  In order to establish a prima facie violation

of Section 1681e(b), the consumer must present evidence tending to show that the consumer reporting agency ("CRA") prepared a report that contained inaccurate information.  Ray v. Equifax Info. Servs., 327 F. App'x 819, 826 (11th Cir. 2009); Enwonwu v. Trans Union, LLC, 164 F. App'x 914, 918 (11th Cir. 2006); Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991).  If a consumer fails to meet the initial burden of proving an inaccuracy, as a matter of law, that consumer does not establish a violation of Section 1681e(b), and the court need not further inquire into the reasonableness of the procedures adopted by the CRA.  Cahlin, 936 F.2d at 1156.  If evidence is presented that does tend to show that a report contained inaccurate information, the agency can avoid liability by showing that its inaccuracy was generated by following reasonable procedures-a question that in most cases is resolved by a jury. Cahlin, 936 F.2d at 1156; Jackson v. Equifax Info. Servs., 167 F. App'x 144, 146 (11th Cir. 2006); Enwonwu, 164 F. App'x at 918.

Likewise,  in order to establish a violation of Section 1681i, Plaintiff must also prove inaccuracy.  Section 1681i(a) imposes on CRAs the duty to make reasonable efforts to investigate and correct inaccurate or incomplete information stored in its credit file when brought to its attention by the consumer.  Collins, 775 F.3d at 1334-35; Cahlin, 936 F.2d at 1160.  Under this section, "if the completeness or accuracy of any item of information contained in a consumer's file at a [CRA] is disputed by the consumer and the consumer notifies the agency directly . . . the agency shall . . . conduct a reasonable investigation to determine whether the disputed information is inaccurate

20

. . . ." 15 U.S.C. § 1681i(a)(1)(A). A CRA violates Section 1681i(a) if a consumer notifies the agency that there is inaccurate information contained in his file and the agency does not conduct a reasonable reinvestigation into the matter. <u>Collins</u>, 775 F.3d at 1335. In order for a consumer to establish a claim pursuant to Section 1681i, the consumer must first show that there was reported information on his or her credit report that was inaccurate or incomplete. <u>Cahlin</u>, 936 F.2d at 1160 (explaining that when a consumer brings a claim for violation of Section 1681i, the court "is generally called upon to determine whether the [CRA] could have discovered an error in a particular report through a reasonable investigation" and therefore a Section 1681i claim "is properly raised when a particular credit report contains a factual deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry"); <u>Rumbough v. Experian Info. Solutions</u>, No. 6:12-CV-811-Orl-22DAB, 2014 WL 11427967, at *8 (M.D. Fla. Jan. 9, 2014), <u>aff'd</u> 626 F. App'x 224 (11th Cir. 2015); <u>Lazarre v. JP Morgan Chase Bank, N.A.</u>, 780 F. Supp. 2d 1330, 1334 (S.D. Fla. 2011); <u>see also</u> <u>DeAndrade v. Trans Union LLC</u>, 523 F.3d 61, 67 (1st Cir. 2008) (requiring plaintiffs to show that reported information is factually inaccurate to bring a claim under Section 1681i). If there is no genuine issue of fact as to the accuracy of the report, then a Section 1681i(a) claim fails as a matter of law. <u>DeAndrade</u>, 523 F.3d at 68.

Applying the law to the facts of this case, Plaintiff meets his burden of raising a genuine issue of material fact as to whether there were inaccuracies in Experian's credit

AO 72A
(Rev.8/82)

file and reporting.  Based on Experian's ACDV and the outcome of the investigation, it is apparent that NCS reported that Plaintiff's balance is $2,071, the amount past due is $2,071, and Plaintiff's high credit with NCS is $1,782.  (Def.'s Exs. G (indicating $2,071 as the balance and past due amount), H (explaining that the result of the investigation was that the NCS item will remain unchanged as a result of the processing of Plaintiff's dispute)).  A reasonable factfinder could conclude that this amount is inaccurate based upon the fact that Thrifty initially provided Plaintiff with a rental summary showing that after the application of the $350.00 deposit, a zero balance remained as of July 20, 2012.  (Pl.'s Aff. ¶ 7, Ex. A).  As a result, reasonable factfinder could infer, viewing the facts in the light most favorable to Plaintiff, that a zero balance remained after application of the $350.00 deposit.  Moreover, despite the indication of a zero balance, Thrifty sought $1017.41 on August 8, 2012; 882.50 on August 10, 2012; and $1,782.61 on August 15, 2012, August 28, 2012, October 10, 2012, and October 30, 2012.  (Def.'s Ex. C; Pl.'s Resp. to DSMF ¶¶ 7, 10-12; Pl.'s Am. Compl. ¶¶ 12-14, Exs. B, C, D; Pl.'s Aff. ¶¶ 8-14).  Contrary to Thrifty's attempts to obtain $1,782.61 in August and October 2012, JNR Adjustments attempted to collect $882.50 during the same time period in September 2012.  (Pl.'s Aff. ¶ 17, Ex. I).  Based on the fact that Thrifty initially indicated a zero balance and then sought to collect so many different amounts from Plaintiff, amounts which increased and decreased without Plaintiff making any payments, and that none of amounts sought from Thrifty matched the $2,071 past due balance indicated by Experian, a reasonable factfinder could infer that

the $2,071 balance and past due amount was not accurate.

Experian, relying upon Carvalho v. Equifax Info. Servs., 629 F.3d 876 (9th Cir. 2010), argues that Plaintiff's claimed inaccuracy does not satisfy his burden of showing that there were inaccuracies in Experian's file and reporting because the inaccuracy stemmed from a legal dispute between Plaintiff and Thrifty as to whether the terms of his rental agreement were satisfied by Thrifty's retention of his initial $350.00 deposit. Experian contends that it is up to a court to interpret Thrifty's rental contract and Experian does not have the duty to obtain a legal opinion in order to resolve the issue. In Carvalho, the plaintiff, Carvalho, had obtained medical treatment and had signed a contractual provision obligating her to pay for medical services in the event that her insurance did not pay within ninety days. Carvalho, 629 F.3d at 882. The insurer did not pay Carvalho's claim. Id. Carvalho argued that even though she had obtained medical services valued at $118, her credit report inaccurately reflected that she owed $118 for the services because if her medical provider had submitted her insurance claim sooner, her insurance would have paid for her medical services within the ninety day period. Id. Carvalho disputed the debt with the credit reporting agencies, indicating that for some reason, her insurer did not pay her medical bills. Id. The credit reporting agencies sent a Consumer Dispute Verification form requesting that the collector verify the account information and the collector responded that the account information was accurate. Id. at 882. The Ninth Circuit sided with the credit reporting agencies and found that their reports were accurate. Id. at 891. The Ninth Circuit reasoned,

"Carvalho does not contend that the CCS collection account does not pertain to her, that the amount past due is too high or low, or that any of the listed dates are wrong." Id. Carvalho did not dispute that she received services in the amount of $118 for which she had not paid. Id. Instead, Carvalho admitted that all of the data on her report was correct on its face, but argued that she was not legally obligated to pay the bill until the medical provider properly billed her insurer and that the credit reporting agencies had a legal obligation to undertake a searching inquiry into the consumer's legal defenses into payment. Id. The Ninth Circuit concluded that the credit reporting agencies did not have the obligation to evaluate Carvalho's legal obligations and provide a legal opinion on the merits; they simply collect and report information furnished by others. Id. at 891-92. This Case is distinguishable, however, because the Plaintiff here does contend that the amount NCS attempted to collect is too high as Thrifty and others had attempted to collect less money in the past and had not provided an explanation as to the differing amounts. Additionally, Experian does not direct the Court to evidence supporting the notion that the basis of the dispute between Plaintiff and Thrifty is properly characterized as being derived from a legal disagreement over the terms of their contract. There is no evidence in the record tending to explain why Thrifty initially indicated that Plaintiff's balance was a zero balance and then demanded additional amounts of money from him. Based on all of the different correspondences Plaintiff received reflecting different amounts owed, Plaintiff's dispute may be characterized as a factual dispute about the amount owed, if any. By Plaintiff's account, he sought the

truth of the matter, but was not given a responsive answer by either NCS or Experian. Here, a reasonable reinvestigation should be able to pinpoint one amount Plaintiff owed to Thrifty, not the multitude of different amounts that Thrifty and its collectors had indicated to him, which each, incidentally, were different from the $2,071 balance and past due amount reflected in Experian's credit file.  Compare Def.'s Ex. H (reflecting that the NCS account had a $2,071 balance and that $2,071 was past due) with Def.'s Ex. C (reflecting that Plaintiff owed Thrifty $1,017.41, $882.50, and $1,782.61); Pl.'s Aff. ¶ 17, Exs. I (reflecting that Plaintiff owed Thrifty $882.50).   A reasonable investigation should also be able to uncover whether the initial representation of a zero balance was correct.  Viewing the facts in the light most favorable to Plaintiff, the evidence in the record raises a genuine issue of material fact as to whether there was a factual inaccuracy in Experian's credit file.

### 2. Adequacy of Experian's Investigative Procedures

Experian argues that even if it reported the NCS account inaccurately, Plaintiff's claims pursuant to Section 1681e(b) fail because he has no evidence showing that its procedures for ensuring maximum possible accuracy were unreasonable and Experian followed its reasonable procedures when it reinvestigated Plaintiff's dispute.  Plaintiff responds that Experian violated Section 1681i because it did not conduct a reasonable investigation of his dispute to determine whether the information he disputed was inaccurate.  Plaintiff contends that Experian's investigation was inadequate because Experian did not communicate the nature of the dispute to NCS.  In support, Plaintiff

asserts that Experian's investigation solely consisted of sending an ACDV to NCS with only the general description of Plaintiff's dispute as "consumer states inaccurate information" and "provide or confirm complete ID and account information." (Def.'s Ex. G). Plaintiff contends that the same conduct violated Section 1681e(b) because Experian continued to inaccurately report his credit information following his dispute.

Under Section 1681i, "[w]hen a consumer disputes information with a CRA, the CRA must conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." Hinkle v. Midland Credit Mgmt., No. 15-10398, — F.3d —, 2016 WL 3672112, at *4 (11th Cir. July 11, 2016). What constitutes a "reasonable investigation will vary upon the circumstances of the case." Hinkle, 2016 WL 3672112, at *5. "Although Section 1681i(a) does not define the term 'reasonable investigation,' courts have consistently held a reasonable reinvestigation requires more than 'making only a cursory investigation into the reliability of information that is reported to potential creditors.'" Wright v. Experian Info. Solutions, 805 F.3d 1232, 1243 (10th Cir. 2015) (citing Cortez v. Trans Union, 617 F.3d 688, 713 (3d Cir. 2010)); Schweitzer v. Equifax Info. Sys., 441 F. App'x 896, 903-04 (3d Cir. 2011).

Where a consumer notifies a CRA that the information in his file is inaccurate and the CRA conducts an unreasonably cursory investigation, any subsequent reporting containing the same disputed information would necessarily not have been prepared

following reasonable procedures to assure maximum possible accuracy.[3]  Lazarre v. JPMorgan Chase Bank, N.A., 780 F. Supp. 2d 1330, 1336 (S.D. Fla. June 23, 2011). Under such circumstances, a violation of Section 1681i(a) can entail a violation of Section 1681e(b).[4]  Lazarre, 780 F. Supp. 2d at 1336; see also Bryant v. TRW, Inc., 689 F.2d 72, 78-79 (6th Cir. 1982).  Accordingly, this Court, as the parties have done, analyzes Plaintiff's Section 1681i(a) and Section 1681e(b) claims together below.

Based on the evidence before the Court, a reasonable factfinder conclude that Experian conducted no more than a cursory investigation which, under the

_____

[3]  Here, Experian indicated after its reinvestigation that the information for the NCS account challenged by the Plaintiff would remain the same in subsequent reports and that it would make no change to the reporting of the NCS account.  (Def.'s Ex. H). Experian does not argue that it has not published any reports including the NCS information after it resolved Plaintiff's dispute against him.

[4]  Experian seems to take issue with this point, but provides no contrary authority tending to show that the alleged circumstances here cannot violate both Sections 1681i(a) and 1681e(b).  (Def.'s Reply 1).  This Court is not under an obligation to distill and develop Experian's argument for it and declines to do so. United States Steel Corp. v. Astrue, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (declining to address argument because it was perfunctory and underdeveloped and not supported by citation to authority); Flanigan's Enters., Inc. v. Fulton Cty., 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument), superseded by statute on other grounds, 596 F.3d 1265 (11th Cir. 2010); Resolution Trust Corp. v. Dunmar, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it.").  Moreover, the wording of Section 1681e(b) does not indicate that such a claim is not cognizable.  Section 1681e(b) provides that "[w]henever a [CRA] prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  Thus, there is no apparent exclusion for when an unreasonably cursory reinvestigation procedure leads to the publication of an inaccurate consumer report.

circumstances, was unreasonable. Here, Plaintiff's counsel contacted Experian via letter and advised that Plaintiff disputed the accuracy of its reporting with regard to the account for NCS. (Def.'s Ex. E). Counsel explained in his letter that after Plaintiff returned his Thrifty rental car, Thrifty provided Plaintiff with a receipt showing that all monies had been paid. (Id.). Counsel further explained that Thrifty subsequently claimed that additional amounts were due. (Id.). Plaintiff's counsel stated that Thrifty later claimed that Plaintiff owed $1,782. (Id.). Counsel further explained that after Thrifty referred his account to NCS for collection, he called NCS to dispute the debt. (Id.). Plaintiff requested that NCS "substantiate that additional amounts were owed," but NCS did not provide the requested information. (Id.). Plaintiff was also told that NCS did not have documentation regarding the account. (Id.). Although the NCS representative indicated that documentation would be obtained and that NCS would return Plaintiff's call, NCS never returned his call. (Id.). Rather than including all of the details Plaintiff gave about the dispute, the ACDV that Experian sent to NCS to investigate the dispute, merely stated "consumer states inaccurate information" and "provide or confirm complete ID and account information."[5] (Def.'s Ex. G). This information is insufficient to put NCS on notice that Plaintiff's dispute was that Thrifty initially told him that he had a zero balance and then subsequently demanded additional amounts, including $1,782. This is also not sufficient to put NCS on notice that Thrifty

---

[5] Although Experian argues on summary judgment that it submitted Plaintiff's letter to NCS with the ACDV, Experian provides no admissible evidence supporting this fact.

had demanded additional amounts from Plaintiff but NCS had no documentation and could not provide substantiation for the amounts sought.  Based on this limited information about the dispute, NCS would not know that it might need to contact Thrifty in order to determine whether the information about the debt it submitted to Experian was accurate.  Given the limited information provided to NCS, the investigation was not sufficient because it omitted to include all relevant information about the dispute Plaintiff provided[6] and therefore, was not tailored to turn up information regarding the circumstances creating the dispute. Collins, 775 F.3d at 1333 (holding that Experian's reinvestigation was negligent when it disregarded information the consumer provided and instead relied solely on the furnisher to verify the debt); Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1155 (9th Cir. 2009) ("By its ordinary meaning, an 'investigation' requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute."); Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611, 616, 620 (6th Cir. 2012) (cursory confirmation of account status insufficient); Edeh v. Equifax Info. Sys., 974 F. Supp. 2d 1220, 1225-28, 1237-38 (D. Minn. Sept. 24, 2013) (concluding that even though Equifax verified the account balance with furnisher, Equifax's investigation was not reasonable because Equifax did not provide full information to furnisher about the

---

[6]   Notably, the portion of Hughes' Affidavit which describe's Experian's procedures does not indicate that it is Experian's practice to send all of the consumer's correspondence communicating the dispute to the furnisher with the ACDV. (Hughes Aff. ¶ 13).

nature of the dispute including letters from furnisher to consumer stating that the consumer's balance was paid in full and information about the consumer's check paying off the balance); Van Veen v. Equifax Info., 844 F. Supp. 2d 599, 606-07 (E.D. Pa. 2012) (investigation was not reasonable where furnisher merely verified account balances to conclude that consumer's account had $64 balance which had been due and account had been charged off but did not investigate the consumer's statement that the creditor sent him a letter indicating that it had adjusted the account balance down to zero due to incorrect billing).

Even if Experian had provided NCS with all of the information about the dispute that Plaintiff's counsel supplied to Experian, under these circumstances, a reasonable factfinder could find that merely contacting NCS was not sufficient to determine whether the disputed information was inaccurate.  In certain situations, a CRA should go beyond merely verifying the accuracy of its initial source of information. Schweitzer, 441 F. App'x at 904; Cushman v. Trans Union Corp., 115 F.3d 220, 224 (3d Cir. 1997) (finding that a CRA may be required to verify the accuracy of its initial source of information by going beyond that initial source of information where consumer alerted CRA that its initial source may be unreliable); Henson v. CSC Credit Servs., 29 F.3d 280, 286-87 (7th Cir. 1994).  For instance, if the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable, it is not reasonable for the CRA to simply verify the accuracy of the initial source of information. Henson, 29 F.3d at 287;

30

see also Cushman, 115 F.3d at 224.

In this case, a reasonable factfinder could also find that simply contacting NCS and asking it to verify the debt was unreasonable because NCS was an unreliable source. According to Plaintiff's counsel's letter, NCS already indicated to Plaintiff that it did not have documentation regarding the account and NCS never returned plaintiff's call after Plaintiff asked for the documentation. (Def.'s Ex. E; see also Pl.'s Aff. ¶¶ 31-35).[7] Moreover, based on the explanation in the dispute letter that Thrifty advised Plaintiff that he had a zero balance but later sought $1,782, it was very likely that there was a discrepancy in the information that Thrifty had provided to NCS. Thus, a jury could find that Experian should have known that NCS was not a reliable source of information to resolve the dispute and that it should investigate Plaintiff's dispute by also contacting Thrifty.[8] Accordingly, a jury question exists as to whether simply asking NCS to verify the information was sufficient under the circumstances. Accordingly, summary judgment should be **DENIED** as to Plaintiff's FCRA claims.[9]

---

[7] Defendant contends that these passages within Plaintiff's Affidavit are hearsay. These passages are not considered for the truth of the matter asserted, that NCS did not have documentation, but rather the fact that NCS's representative told Plaintiff that NCS did not have documentation. As a result, Plaintiff considered NCS's alleged representations as part of the basis for his dispute regarding the NCS account.).

[8] Notably, Hughes' explanation of Experian's policy does not indicate that Experian will contact any party other than the furnisher of the credit information in circumstances where the furnisher may be unreliable. (Hughes Aff. ¶ 11).

[9] Experian argues on Reply that summary judgment should also be granted as to Plaintiff's FCRA claims because Plaintiff fails to demonstrate that he suffered from

### C.   Plaintiff's GFBPA Claims

Plaintiff contends that Experian violated the GFBPA when it engaged in conduct violating the FCRA, including the reporting of information it knew, or should have known, to be false. (Am. Compl. ¶¶ 86-89).  Experian cursorily contends that Plaintiff's GFBPA claims fail because he has not shown that an unfair or deceptive act occurred. In support, Experian argues that no deceptive act occurred because all of the documentary evidence suggested that the NCS account had been accurately reported and

---

any damages as a result of Experian's violations of the FCRA.  Experian contends that Plaintiff's evidence of damages is inadmissible and insufficient to demonstrate a causal connection between his damages and Experian's credit reporting. (Def.'s Reply 13-14).  Also, on Reply, Experian appears to argues for the first time that summary judgment should be granted as to Plaintiff's claim that the reinvestigation was untimely. (Def.'s Reply 16; Am. Compl. ¶ 34 (explaining that more than sixty days after Plaintiff's counsel sent Plaintiff's dispute letter to Experian, Experian still had not responded to Plaintiff's request that it investigate the accuracy of the NCS report and had not completed its investigation), ¶ 73 (explaining that Experian violated the FCRA by failing to conduct a timely reinvestigation).  New grounds for summary judgment raised for the first time on reply are generally not considered by federal courts.  Accordingly, Experian's new grounds for summary judgment will not be considered.  Herring v. Sec'y. Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir.2005) ("As we repeatedly have admonished, 'arguments raised for the first time in a reply brief are not properly before a reviewing court.'"); Bruce v. Homeward Residential, Inc., No. 1:14-CV-3325-MHC-AJB, 2015 WL 5797846, at *16 n.10 (N.D. Ga. Aug. 31, 2015); Kelley v. Washington Mut. Fin. Inc., Civil Action No. 1:11-CV-2497-RWS, 2013 WL 5530351, at *4 (N.D. Ga. Oct.4, 2013) (refusing to consider res judicata argument raised for the first time within reply brief in support of summary judgment motion).  Even if the Court were to consider Experian's timeliness argument, it could not find for Experian at this juncture.  As noted by Experian, Plaintiff testified that he does not recall receiving the results of the reinvestigation. Although Experian argues it can establish its timeliness even if Plaintiff never received the reinvestigation results because it timely mailed them, Experian fails to present any evidence that the reinvestigation results were mailed.  While the record includes the reinvestigation results, it does not include evidence that the results were mailed to Plaintiff or his counsel.

that Experian fully complied with the reasonableness standards imposed by the FCRA. As discussed above, genuine issues of material fact remain as to whether the NCS account had been accurately reported and as to whether Experian complied with the reasonableness standards imposed by the FCRA.  Accordingly, summary judgment should be **DENIED** as to Plaintiff's GFBPA claim.

### D.    Plaintiff's Claims Are Not Forfeited By His Responses to Experian's Requests for Admission

Experian further contends that Plaintiff's claims fail because he did not timely respond to its Requests for Admission and has therefore admitted that he has no damages.   Plaintiff responds that during a status conference before this Court, he obtained an extension to respond to Experian's discovery requests through July 7, 2015, and thus, his response to the Requests for Admission on that date were timely.  On Reply, Experian does not dispute Plaintiff's counsel's account of the facts in this regard. Thus, it is not clear to this Court whether or not Plaintiff's response to Experian's Requests for Admissions is tardy.  Even if it were, however, this Court would construe Plaintiff's opposition to deeming the statements within the Requests for Admissions admitted as a request to withdraw his admissions.  See, e.g., Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 154 (6th Cir. 1997) (holding that a formal, written motion to withdraw is not necessary and that a withdrawal or request to withdraw may be made orally or may be imputed from a party's actions);  Chancellor v. City of Detroit, 454 F. Supp. 2d 645, 666 (E.D. Mich. 2006) (late filing of response to requests for admission

was considered a request for withdrawal of admissions); <u>Reid v. McNeil</u>, No. 3:09-CV-1283-J-34MCR, 2015 WL 5755898, at *5 (M.D. Fla. Sept. 29, 2015).  Here, Plaintiff's admissions are properly withdrawn.  District courts apply a "two-part test" in deciding whether to grant or deny a motion to withdraw or amend admissions.  <u>Perez v. Miami-Dade Cty</u>, 297 F.3d 1255, 1264 (11th Cir. 2002) (citing <u>Smith v. First Nat'l Bank</u>, 837 F.2d 1575, 1577 (11th Cir. 1988)).  First, the court should consider whether the withdrawal will subserve the presentation of the merits, and second, it must determine whether the withdrawal will prejudice the party who obtained the admissions.  <u>Id.</u>  In this case, allowing Plaintiff to withdraw his admissions promotes the presentation of the merits because most of the admissions upon which Experian seeks to rely are hotly disputed by the Plaintiff and contrary to Plaintiff's sworn deposition testimony.  (<u>See</u> Def.'s Request for Admission ¶¶ 1-6, 9, 12; Pl.'s Br.; Pl.'s Dep.).  In addition, Experian has not demonstrated that it has been caused any prejudice by the alleged tardiness of Plaintiff's response.  Experian received Plaintiff's responses to its requests for admission on July 7, 2015.  At that time, Experian had not taken Plaintiff's deposition yet and could have explored any issues raised in the requests for admission during his deposition.  Indeed, Experian did explore topics covered by the requests for admission.  (<u>See generally</u> Pl.'s Dep.).  Moreover, discovery did not close until October 15, 2015, and therefore, Experian could have engaged in any other discovery it needed in connection with information it learned from Plaintiff's response to its requests for admission.  Accordingly, to the extent that Plaintiff's tardiness caused the admissions

AO 72A
(Rev.8/82)

to be deemed true, this Court concludes that the admissions should be withdrawn.

## CONCLUSION

Based on the foregoing reasons, Experian's Motion for Summary Judgment should be **DENIED**.[10] (Doc. 61). Plaintiff's Motion to Strike or Disregard Declaration of Kimberly Hughes is **DENIED**. (Doc. 67). Instead, arguments from Plaintiff's Motion to Strike have been considered objections and are addressed herein when they concern evidence which is relevant and necessary for assessment of the summary judgment motion. Plaintiff's motion for an extension of time to respond to Experian's summary judgment motion is **GRANTED NUNC PRO TUNC**. (Doc. 62). The deadline for Plaintiff's response is extended to December 11, 2015.

**SO REPORTED AND RECOMMENDED** this __22__ day of July, 2016.


/s/ Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

---

[10]   The Court observes that this case has not been resolved with respect to Plaintiff's claims against Defendant National Commercial Services, Inc. Plaintiff is therefore Ordered to inform the Court in writing within thirty (30) days after the District Court issues its Order adjudicating Experian's Motion for Summary Judgment how Plaintiff wishes to proceed against National Commercial Services, Inc.

35